

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## DIVISION

|  |  |  |
|---|---|---|
| Calvin L. Fields | ) | No. |
| Deborah Hughes | ) | |
| | ) | **08CV4416** |
| | ) | **JUDGE BUCKLO** |
| **Prose Plaintiffs** | ) | **MAGISTRATE JUDGE NOLAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| Cook County Sheriff | ) | |
| Tom Dart | ) Magistrate | |
| The County of Cook | ) | |
| International Brotherhood of Teamsters/ | ) | |
| Local Union #714 | | |
| | | |
| **Defendants** | | |

**Complaint**

FILED
8-6-2008
AUG 0 6 2008 TC

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## Jurisdiction

1. The jurisdiction of the court is invoked pursuant to the Civil Rights Acts, 42 U.S.C. § 1981; the judicial code, 42 U.S.C. § 2000e-2 (A)(1)(2), C (2)(3); The Constitution of the United States, and pendent jurisdiction as provided under 28 U.S.C. §1367(a).

## Parties

2. Plaintiff / Employee Deputy Sheriff Calvin L. Fields is a Resident of the Calumet city, Illinois, herein shall be referred to as D/S Fields.

3. Plaintiff / Employee Deputy Sheriff Deborah Hughes is a resident of the City of Desplaines, Illinois, herein shall be referred to as D/S Hughes.

4. Defendant / Tom Dart is the current Cook County Sheriff, an office of Cook County created pursuant to the Local Government Article of Illinois Constitution Ill. Const.1970 Art 7, §4©), and was the Sheriff at all times pertinent hereto. He is sued in his official capacity.

5. Defendant / County of Cook is the employer of the Sheriff and Plaintiffs and is a Local public entity under the laws of the State of Illinois.

6. Defendant / Local Union # 714 of the International Brotherhood of Teamsters is the Representing bargaining agent for the Plaintiffs.

7. At all times material to this Complaint the defendants were acting under color of state law and ordinance and or regulation.

Con't

## Facts

8. On July 10, 2007 the Defendants being the County of Cook and the Sheriff of said County entered into an Collective Bargaining Agreement with the International Brotherhood of Teamsters and Local #714 being the representing body of the Deputy Sheriffs of same county, with the County of Cook / Sheriff of Cook County as Joint Employers, as shown as Exhibit #A.

9. In September of 2007, all Deputy Sheriffs assigned, including the Plaintiffs listed were informed to submit a request for secondary employment as per the Court Services Department General Order Directive dated on 10 Jun 05, as shown in exhibit # 1 and the superseded directive as shown in Exhibit #2

10. During that period each of the Plaintiffs/ Employees listed in paragraphs #2 and #3, submitted the required forms for secondary employment as shown in Exhibit #3. During such time D/S Fields and D/S Hughes were denied secondary employment approval by the Designated Department heads of the Sheriff of Cook County. For attendance issues, as shown in Exhibit # 4.

11. D/S Fields and D/S Hughes filed separate grievances or complaints with their representing Union, being Defendants; Local Union #714 of the International Brotherhood of Teamsters to which with respect to D/S Hughes was to served and did a five day suspension for violating secondary employment guidelines for attendance issues and then would be allowed to continue with secondary employment after again resubmitting the forms required, with loss of pay from the Primary position being the Sheriff of cook County and secondary employer as shown in Exhibits #5. D/S Fields was also informed as to the reasons for denial for secondary employment was the same being "attendance issues".

12. D/S Fields was informed by the then acting Chief Deputy ,now Assistant Chief Deputy Sheriff Kevin Connelly during a verbal mediation hearing in October of 2007 to resubmit for approval of secondary employment, but with loss of pay from secondary employment, because as he stated " If you think "we" perhaps referencing the Sheriff's Department, are going to pay you for working a second job, you're crazy", to which D/S Fields explained "that the department is not paying me/D/S Fields for secondary employment, but you're paying me because you have denied me the right to work elsewhere, outside of normal duty/working hours". To which the grievance was denied by the designated department heads as shown in Exhibits #6.

Con't

13. As shown in Exhibit #7, D/S Fields received notification via U.S. postal mail, a letter with regards to the pending grievance as previously mention in paragraph 13, that the Teamster Local Union #714 would be arbitrating the matter and further investigate the Same. D/S Fields has heard nothing from the Teamster local Union #714 since receiving the letter previously mentioned.

14. In June of 2008 the International Brotherhood of Teamsters took Trusteeship over the Local Union #714, whereby creating a void in collective bargaining mediation hearings, with respect to grievances filed by the employees /Deputy Sheriffs, of which D/S Fields inquired as to what would be the outcome of his pending grievance. To which he was informed that all matters/grievances were on hold as shown in exhibit #8.

15. Each of the Plaintiffs in this matter have never been disciplined, with respect to their attendance before submitting their secondary employment request, and are still assign by the Sheriff of Cook County and employed by the County of Cook, and also Represented by the Union Local #714 of the International Brotherhood of Teamsters. In addition neither D/S Fields nor D/S Hughes has filed a complaint with Equal Employment Commission( EEOC ) or the Illinois Human Rights Commission ( IHRC ) to Date or received notice to sue.

## Count I
### 42 U.S.C. § 1981 Claims For Violations of Rights
### as to Collective Bargaining Agreement

16. The Plaintiffs reaffirms paragraphs 8 thru 15.

17. That doing all times the plaintiffs were and still are employed by and represented the Defendants mentioned and their rights were denied as to 42 U.S.C. § 1981(A),(B) Equal rights under the law, that they have been subject to being harassed and disciplined as to enforcing the rights of the collective bargaining agreement, and as to the" just cause" clause in the collective bargaining agreement as shown in exhibit #A, with respect to secondary employment.

Wherefore the Plaintiffs hereby demands compensatory damages from all Defendants and other such additional reliefs as this court deems equitable and just.

## Count II
### 42 U.S.C.§ 1981 Claims For Denial of Rights by
### Employers and Labor Organization

18. The Plaintiffs reaffirms paragraphs 8 thru 15.

19. That because the collective bargaining agreement shown as exhibit #A, and that All defendants were parties to with respects to its approval, that of ©) Protection against impairment of rights were violated under the color of State Law.

Con't

Wherefore the Plaintiffs hereby demands compensatory and punitive damages from all Defendants and other such additional reliefs as this court deems equitable and just.

## Count III
## 42 U.S.C.§ 2000e-2 Claims for Conspiracy by
## Employers and Labor Organization

20. The Plaintiffs reaffirms paragraph #8

21. That the Defendants entered into an agreement knowingly and committed the actions of § 2000-e2.(1),©)(2)(3) unlawful employment practices, by failing or refusing and discriminating against the Plaintiffs with respect to their ability to have employment by other employers elsewhere, thru the now Collective Bargaining Agreement as previously stated as Exhibit #A , and in addition hereby violating the Plaintiffs XIV Amendment rights of the United States Constitution being section(1).

Wherefore the Plaintiffs demands compensatory and punitive damages from all Defendants and other such additional reliefs as this Court deems equitable and just.

## Count IV
## (Pendent State Law Claim For Employment Status)

22. The Plaintiffs reaffirms paragraphs #8 thru #15

23. The Plaintiffs and Defendants are defined by the Illinois Compiled Statues as (775 ILCS 5/ART.2-101) of employment as section (A) (1)(d) Employees being the Plaintiffs, and section (B)(1)(a)©)(d) refers to the Sheriff of Cook County and Cook County, International Brotherhood of Teamster Union Local #714 as Defendants. Wherefore the Plaintiffs alleges Civil Rights Violations under (775 ILCS 5/SEC.2-102(a)©)(e).

Wherefore, Plaintiffs demands compensatory and punitive damages from all Defendants and other such additional reliefs as this Court deems equitable and just.

## Count V
## (Pendent State Law Claim For Civil Liabilities)

24. The Plaintiffs reaffirms paragraphs #8 thru#15

25. The Plaintiffs states that with regards to Illinois Compiled Statues being (740ILCS 23/5) Sec.5.(a)(1)(2)(b)©) of the Discrimination prohibited and civil liabilities, that the Defendants being Sheriff of Cook County and the County of Cook did violate the rights of the Plaintiffs as alleged and that are liable for the very same.

Con't

Wherefore the Plaintiffs hereby demands compensatory and punitive damages from the Defendants being the Sheriff of Cook County and The County of Cook and other such Reliefs as the Court Deems equitable and just.

**Respectfully Submitted**

Plaintiff *Deborah Hughes*
Plaintiff *Cal*
**Pro se**

Dated _____06 AUG 08_____

## Contact Information Of All Parties

### Plaintiffs

D/S Calvin L. Fields
110 165th Street
Calumet city, Illinois 60409
(847)630-6436
Email: Gunchariot@comcast.net

D/S Deborah Hughes
2085 Lee St.
Desplaines, Illinois 60018
(847)226-5552
Email: Hughes2me@comcast.net

### Defendants

Cook County Sheriff Tom Dart
50 W. Washington, Rm #704
Chicago, Illinois 60602

County Of Cook
118 North Clark Street, Rm#537
Chicago, Illinois 60602

International Brotherhood Of
Teamsters Local Union#714
6815 W. Roosevelt Rd.
Berwyn, Illinois 60402-1098

Exhibit # A

# COLLECTIVE BARGAINING AGREEMENT

**Between**



## LOCAL UNION NO. 714
## THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS
### (Representing Deputy Sheriffs)

**And**




## COUNTY OF COOK/SHERIFF OF COOK COUNTY
## (AS JOINT EMPLOYERS)

**Effective**

**December 1, 2006 Thru November 30, 2010**

# TABLE OF CONTENTS

| Article | Section | Subject | Page |
|---------|---------|---------|------|
| | | PREAMBLE | 1 |
| I. | | RECOGNITION | 1 |
| | 1.1 | Representative Unit | 1 |
| | 1.2 | Union Membership | 1 |
| | 1.3 | Dues Checkoff | 1 |
| | 1.4 | Fair Share | 2 |
| | 1.5 | Religion Exemption | 3 |
| | 1.6 | Indemnification | 3 |
| | 1.7 | D.R.I.V.E. Authorization and Deduction | 3 |
| II. | | EMPLOYER AUTHORITY | 3 |
| | 2.1 | Employer Rights | 3 |
| | 2.2 | Employer Obligation | 4 |
| | 2.3 | Union and Employer Meetings | 5 |
| III. | | HOURS OF WORK AND OVERTIME | 5 |
| | 3.1 | Purpose of Article | 5 |
| | 3.2 | Regular Work Periods | 5 |
| | 3.3 | Compensatory Time and/or Overtime Compensation | 5 |
| | 3.4 | Overtime | 6 |
| | 3.5 | Secondary Employment | 6 |
| | 3.6 | No Pyramiding | 7 |
| IV. | | SENIORITY | 7 |
| | 4.1 | Probationary Period | 7 |
| | 4.2 | Definition of Seniority | 7 |
| | 4.3 | Reduction in Work Force, Layoff and Recall | 8 |
| | 4.4 | Termination of Seniority | 8 |
| | 4.5 | Seniority List | 9 |
| V. | | RATES OF PAY | 9 |
| | 5.1 | Payroll Grades | 9 |
| | 5.2 | Classification System | 9 |

# TABLE OF CONTENTS
## (Continued)

| Article | Section | Subject | Page |
|---|---|---|---|
| VI. | | HOLIDAYS | 10 |
| | 6.1 | Designation of Holidays | 10 |
| | 6.2 | Eligibility | 11 |
| | 6.3 | Holidays in Vacations | 11 |
| VII. | | VACATIONS | 11 |
| | 7.1 | Vacation Leave | 11 |
| | 7.2 | Vacation Preference and Scheduling | 12 |
| VIII. | | WELFARE BENEFITS | 13 |
| | 8.1 | Hospitalization Insurance | 13 |
| | 8.2 | Sick Leave | 13 |
| | 8.3 | Disability Benefits | 14 |
| | 8.4 | Life Insurance | 14 |
| | 8.5 | Pension Plan | 15 |
| | 8.6 | Dental Benefits | 15 |
| | 8.7 | Employee Assistance Program | 15 |
| IX. | | ADDITIONAL BENEFITS | 15 |
| | 9.1 | Bereavement Pay | 15 |
| | 9.2 | Maternity/Paternity Leave | 15 |
| | 9.3 | Election Day | 16 |
| | 9.4 | Personal Days | 16 |
| | 9.5 | Jury Duty | 16 |
| | 9.6 | Court Time | 17 |
| | 9.7 | Family Medical Leave Act | 17 |
| | 9.8 | American with Disabilities Act | 17 |
| X | | LEAVES OF ABSENCE | 17 |
| | 10.1 | Regular Leave | 17 |
| | 10.2 | Seniority on Leave | 18 |
| | 10.3 | Retention of Benefits | 18 |
| | 10.4 | Union Leave | 18 |
| | 10.5 | Military Leave | 19 |

## TABLE OF CONTENTS
### (Continued)

| Article | Section | Subject | Page |
|---------|---------|---------|------|
| | 10.6 | Veterans Conventions | 19 |
| | 10.7 | Approval of Leave | 20 |
| XI | | GRIEVANCE PROCEDURE | 20 |
| | 11.1 | Policy | 20 |
| | 11.2 | Definition | 20 |
| | 11.3 | Representation | 21 |
| | 11.4 | Grievance Procedure Steps | 21 |
| | 11.5 | Discipline "Fast Track" Arbitration | 24 |
| | 11.6 | Time Limits | 24 |
| | 11.7 | Stewards | 24 |
| | 11.8 | Union Representatives | 26 |
| XII | | CONTINUITY OF OPERATION | 26 |
| | 12.1 | No Strike | 26 |
| | 12.2 | Union Responsibility | 26 |
| | 12.3 | Discharge of Violators | 26 |
| | 12.4 | No Lock-Out | 27 |
| | 12.5 | Reservation of Rights | 27 |
| XIII. | | TRAINING AND EDUCATION | 27 |
| | 13.1 | Tuition Reimbursement | 27 |
| | 13.2 | In-Service Training | 27 |
| XIV. | | MISCELLANEOUS | 28 |
| | 14.1 | No Discrimination | 28 |
| | 14.2 | Health and Safety | 28 |
| | 14.3 | Bulletin Boards | 29 |
| | 14.4 | Partial Invalidity | 29 |
| | 14.5 | Subcontracting | 29 |
| | 14.6 | Credit Union | 29 |
| | 14.7 | Personnel Files | 30 |

## TABLE OF CONTENTS
### (Continued)

| Article | Section | Subject | Page |
|---------|---------|---------|------|
| | 14.8 | Discipline | 30 |
| | 14.9 | Cook County Sheriff Merit Board | 31 |
| | 14.10 | Job Openings | 31 |
| | 14.11 | Reassignment Under Investigation | 31 |
| | 14.12 | Use of Official Facilities and Services | 31 |
| | 14.13 | Indemnification | 32 |
| | 14.14 | Uniform Allowance | 32 |
| | 14.15 | Automobile Allowance | 32 |
| | 14.16 | Pay Day | 32 |
| | 14.17 | Radios | 33 |
| | 14.18 | Requests for Time off | 33 |
| XV. | | JOB POSTING AND TRANSFERS | 33 |
| | 15.1 | Vacancy | 33 |
| | 15.2 | Facilities/Units Open to Posting and Bidding Process | 33 |
| | 15.3 | Posting of Vacancies and Bidding | 34 |
| | 15.4 | Probationary and Administrative Unit Employees | 35 |
| | 15.5 | Transfers | 35 |
| | 15.6 | Exceptions to the Requirements of Job Posting, Bidding and Transfers | 35 |
| | 15.7 | Notification | 36 |
| XVI. | | DURATION | 36 |
| | 16.1 | Term | 36 |
| | 16.2 | Notice | 37 |
| | | Appendix A - Salary Schedule | 39 |
| | | Appendix C - Cook County Health Plan | 41 |

## COLLECTIVE BARGAINING AGREEMENT

## PREAMBLE

This collective bargaining agreement is entered into between the County of Cook and the Sheriff of Cook County, joint employers of employees covered by this Agreement (hereinafter collectively referred to as the "Employer") and Local Union No. 714 - The International Brotherhood of Teamsters (hereinafter referred to as the "Union").

## ARTICLE I
## Recognition

### Section 1.1  Representative Unit:
The Employer recognizes the Union as the sole and exclusive representative for all employees of the Employer in the defined bargaining unit described as all full-time employees in the Merit Board classification of Deputy Sheriff, other than Police Officers and Correctional Officers, and excluding all confidential employees as determined by the Labor Board.

### Section 1.2  Union Membership:
The Employer does not object to Union membership by its employees, and believes that certain benefits may inure from such membership. For the purpose of this Section, an employee shall be considered to be a member of the Union if he/she timely tenders the dues and initiation fee required as a condition of membership.

The Employer will grant the Union an opportunity during the orientation of new employees to present the benefits of Union membership, at which time the Union may give such employees a copy of this Agreement.

### Section 1.3  Dues Checkoff:
With respect to any employee from whom the Employer receives individual written authorization, signed by the employee, in a form agreed upon by the Union and the Employer, the Employer shall deduct from the wages of the employee the dues and initiation fee required as a condition of membership in the Union, or a representation fee, and shall forward such amount to the Union within thirty (30) calendar days after close of the pay period for which the deductions are made. The amounts deducted shall be set by the Union, and the Employer shall continue to retain a service charge of up to five cents (5¢) for making each such deduction.

## Section 1.4 "Fair Share:"

1. The County shall grant "Fair Share" to the Union in accordance with Sections 6(e)-(g) of the Illinois Public Labor Relations Act upon satisfactory demonstration to the County that the Union has more than 50% of the eligible employees in the bargaining unit signed up as dues paying members. Once this condition has been met, all employees covered by this Agreement will within 30 days of the Union meeting said condition or within 30 days of their employment by the County either (1) become members of the Union and pay to the Union regular Union dues and fees or (2) will pay to the Union each month their fair share of the Union's costs of the collective bargaining process, contract administration and pursuing matters affecting employee wages, hours, and other conditions of employment.

2. Such fair share payment by non-members shall be deducted by the County from the earnings of the non-member employees and remitted to the Union, provided, however, that the Union shall certify to the County the amount constituting said fair share, not exceeding the dues uniformly required of members of the Union, and shall certify that said amount constitutes the non-members' proportionate share of the Union's costs of the collective bargaining process, contract administration and pursuing matters affecting employee wages, hours and other conditions of employment.

3. Upon receipt of such certification, the County shall cooperate with the Union to ascertain the names of and addresses of all employee non-members of the Union from whose earnings the fair share payments shall be deducted and their work locations.

4. Upon the Union's receipt of notice of an objection by a non-member to the fair share amount, the Union shall deposit in an escrow account, separate from all other Union funds, 50% of all fees being collected from non-union employees. The Union shall furnish objectors and the County with verification of the terms of the escrow arrangement and, upon request, the status of the Fund as reported by the bank.

   The escrow fund will be established and maintained by a reputable independent bank or trust company and the agreement therefore shall provide that the escrow accounts be interest bearing at the highest possible rate; that the escrowed funds be outside of the Union's control until the final disposition of the objection; and that the escrow fund will terminate and the fund therein be distributed by the terms of an ultimate award, determination, or judgement including any appeals or by the terms of a mutually agreeable settlement between the Union and an objector or group of objectors.

5. If an ultimate decision in any proceeding under state or federal law directs that the amount of the fair share should be different than the amount fixed by the Union, the Union shall promptly adopt said determination and notify the County to change deductions from the earnings of non-members to said prescribed amount.

### Section 1.5  Religion Exemption:

Employees who are members of a church or religious body having a bona fide religious tenet or teaching which prohibits the payment of a fair share contribution to a union shall be required to pay an amount equal to their fair share of Union dues, as described in Section 4, to a non-religious charitable organization mutually agreed upon by the Union and the affected employees as set forth in Section 6 (g) of the Illinois Public Labor Relations Act.

### Section 1.6  Indemnification:

The Union shall indemnify and save the County harmless against any and all claims, demands, suits, or other forms of liability that may arise out of or by reason of any action taken by the County for the purpose of complying with this Article.  If an incorrect deduction is made, the Union shall refund any such amount directly to the involved employee.

### Section 1.7  D.R.I.V.E. Authorization and Deduction:

In addition to the terms and conditions contained in the above referenced collective bargaining agreement between the Employer and the Union, the Employer and the Union further agree that:

The Employer agrees to deduct from the paycheck of all employees who submit authorization cards and are covered by this Agreement voluntary contributions to D.R.I.V.E.  D.R.I.V.E. shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked.  The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage.  The Employer shall transmit to:

D.R.I.V.E.
International Brotherhood of Teamsters
25 Louisiana Avenue, NW
Washington, DC 20001

Send on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's social security number and the amount deducted from the employee's paycheck.  No such authorization shall be recognized if in violation of State and Federal law.  No deductions shall be made which is prohibited by applicable law.

### ARTICLE II
### Employer Authority

### Section 2.1  Employer Rights:

The Union recognizes that the Employer has the full authority and responsibility for directing its operations and determining policy.  The Employer reserves unto itself all powers, rights, authority, duties and responsibilities conferred upon it and vested in it by State and Federal

statutes and Constitutions, and to adopt and apply all rules, regulations and policies as it may deem necessary to carry out its statutory and constitutional responsibilities. Employer rights shall be limited only by the specific and express terms of this Agreement. Employer rights include, but are not limited to:

A.    The Union recognizes the exclusive rights of the Employer to determine its policies, standards of services and to operate and manage its affairs and to direct its work force in accordance with its responsibilities. The Employer has all the customary and usual rights, power and functions of management.

B.    The Union recognizes the exclusive rights of the Employer to hire, transfer, promote, discipline and suspend employees and to establish reasonable work rules, make work assignments, determine schedules of work, methods, processes and procedures by which work is to be performed, place, methods, means and number of personnel needed to carry out the Employer's responsibilities and duties as well as the right to determine work, productivity, reasonable performance and evaluation standards.

C.    The Union recognizes that the Employer has the right to change existing or introduce new methods, equipment or facilities and the right to contract for goods and services.

D.    The Employer has the right to make, publish and enforce general orders, rules and regulations and the Employer has the right to reclassify existing positions based on assigned duties and responsibilities, or make changes in assigned duties and responsibilities.

E.    The Employer has the right to enter into mutual aid and assistance agreements with other units of government.

F.    The Employer has the right to establish standards to which force, including deadly force, can be used.

G.    The Employer has the right to take any and all actions as may be necessary to carry out the duties and responsibilities of the employer in situations of civil emergency as may be declared by the employer. It is the sole discretion of the employer to determine that civil emergency conditions exist, which may include but not be limited to riots, civil disorders, tornado conditions, floods, other emergency conditions, or other circumstances beyond the control of the employer which call for immediate action whereas it may be required to assign employees as the Employer deems necessary to carry out its duties and responsibilities.

## Section 2.2  Employer Obligation:
The Union recognizes that this Agreement does not empower the Employer to do anything that it is prohibited from doing by law.

It is further understood that any actions taken in the areas of wages, hours, and terms and conditions of employment shall be done in accordance with the Illinois Public Labor Relations Act.

## Section 2.3  Union and Employer Meetings:

For the purpose of conferring on matters of mutual interest which are not appropriate for consideration under the grievance procedure, the Union and Employer agree to meet at least every three (3) months through designated representatives at the request of either party and at mutually agreed upon times and locations.  The Union and Employer shall each designate not more than five (5) representatives to a labor-management committee for this purpose.

Arrangements for such meetings shall be made reasonably in advance and a written agenda of the matters to be taken up at the meeting shall be presented by the requesting party at the time the meeting date is scheduled.  Matters taken up in these meetings shall be confined to those included in the agenda.

## ARTICLE III
## Hours of Work and Overtime

## Section 3.1  Purpose of Article:

The provisions of this Article are intended to provide the basis for calculating overtime pay, and shall not be construed as a guarantee of hours of work per day or days per week or pay in lieu thereof, or as a limitation upon the maximum hours per day or per week which may be required.

## Section 3.2  Regular Work Periods:

Hours worked and schedules in effect at the time of this contract shall remain in effect.  Any changes will be discussed with the Union prior to implementation.

Except as provided elsewhere in this agreement, an employee's normal work hours shall generally consist of eight (8) consecutive hours of work.  Each eight (8) hour work day shall be interrupted by a one (1) hour paid lunch break.

## Section 3.3  Compensatory Time and/or Overtime Compensation:

A.  Employees may be assigned to overtime work provided that such overtime shall be limited to either emergency conditions which cannot be deferred and which cannot be performed with the personnel available during normal work hours, or because of an abnormal peak load in the activities of the institution or department.

B.  Employees' normal workday shall be eight (8) consecutive hours of work including a one-hour paid lunch.  Employee's normal work week is forty (40) hours of work in a seven-day period, Sunday through Saturday.  For all hours of work in excess of eighty (80) hours in a bi-weekly pay period, employees will be compensated at a

5

rate of time and one-half (1-1/2) their normal rate of pay. At the employee's option, such compensation will be made in the form of compensatory time off or pay. For purposes of this section, hours of work shall, in addition to hours actually worked, include all paid time excluding sick time.

C.   Compensatory time off may be used in time-blocks of one (1) hour or more at a time mutually agreed to between the employee and his/her supervisor. Compensatory time may be used in one-half (½) hour increments only when requested to be used at the end of a shift subject to manpower needs and subject to the approval of the employees' supervisor.

## Section 3.4 Overtime:

A.   Overtime scheduled at least seven (7) days in advance shall be offered to employees on the basis of seniority and shall be equitably distributed among employees who request such work. Each employee shall be selected in turn according to his or her place on the seniority overtime list, by rotation. When possible, overtime scheduled less than 7 days in advance shall be offered to employees within each facility and unit who request such work by rotation. Overtime lists shall be updated every three (3) months.

B.   An employee requesting to be skipped when it becomes his/her turn to work overtime shall be rotated to the bottom of the seniority list. An employee who works overtime will be placed at the bottom of the overtime seniority list once the overtime is received.

C.   Overtime scheduled 7 days in advance will be denied to an employee for just cause. An employee maybe denied such overtime under this sub-section if the employee has been found guilty of a departmental rule violation while working overtime and received a suspension of 5 (five) days or more. The maximum period of time an employee can be denied overtime under this sub-section will be the number of days of the suspension plus an additional thirty days. An employee may also be denied such overtime if the employee is on "proof status" at the time the overtime is offered.

## Section 3.5 Secondary Employment:

It is understood between the parties that employment with the Cook County Sheriff's Office is the employee's primary job. In all instances, the employee will operate within the guidelines of the department General Order, regarding secondary employment in effect at the time of this Agreement.

Employees engaged in secondary employment with permission shall be allowed to work unlimited hours as long as these hours do not affect the employee's ability to perform his assignments with the employer. Once allowed, secondary employment shall not be terminated except for just cause.

A request for secondary employment shall be denied, under the following circumstances, when the secondary employment is in an establishment where the primary business is the sale of intoxicating liquor or gambling:

1. The employment includes serving as a bartender and/or dispensing intoxicating liquor.
2. The employment includes serving as a cocktail waiter/waitress.
3. The employment is security related.
4. The Sheriff's Office deems that the employment will bring discredit upon the department.

## Section 3.6 No Pyramiding:

Compensation shall not be paid or compensatory time taken more than once for the same hours under any provision of this article or agreement.

## ARTICLE IV
### Seniority

## Section 4.1 Probationary Period:

The probationary period for new employees shall be one year from the date of appointment, consistent with the Rules and Regulations of the Cook County Sheriff's Merit Board.

## Section 4.2 Definition of Seniority:

A. <u>Department Seniority</u> shall be defined as the seniority status of an employee in the job classification Deputy Sheriff with respect to all other employees who have departmental status in the same classification.

Department Seniority earned as Deputy Sheriff with the Cook County Sheriff's Department will be considered for the following:

1. Job Posting and Bidding for District, Division, Unit and Shift (including day-off group).
2. Choice of Vacation Days
3. Layoffs and Recalls

B. <u>County-Wide Seniority</u> shall be defined as a combination of Department seniority plus any time which is credited (described below) or County service in another department of Cook County.

Any employee of the County of Cook who has rendered continuous service to the City of Chicago, the Chicago Park District, the Forest Preserve District, the Water Reclamation District of Greater Chicago and/or Chicago Board of Education shall have

7

the right to have the period of such service credited and counted for the purposes of computing the number of years of service as employees of the County for vacation credit only. All discharges and resignations not followed by reinstatement within one (1) year shall interrupt continuous service, and shall result in the loss of all prior service credit.

Credit for such prior service shall be established by filing, in the Office of the Comptroller of Cook County, a certificate of such prior service from such former place of employment.

## Section 4. 3 Reduction in Work Force, Layoff and Recall:

Should the Employer determine that it is necessary to decrease the number of employees within a job classification, within a department, the employees to be laid off in that classification shall be removed from it in inverse of order of seniority. Where possible, surplus employees and the Union shall be given notice thereof at least two (2) weeks prior to the effective date. Employees laid off as a result of this procedure shall be subject to recall in order of seniority before new employees are hired in the classifications held by them at the time of the reduction in force.

## Section 4.4 Termination of Seniority:

An employee's seniority and employment relationship with the Employer shall terminate upon the occurrence of any of the following:

A. Resignation or retirement;

B. Discharge for just cause;

C. Absence for three (3) consecutive work days without notification to the department head or a designee during such period of the reason for the absence, unless the Employee has an explanation acceptable to the Employer for not furnishing such notification;

D. Failure to report to work at the termination of a leave of absence or vacation, unless the employee has a reasonable explanation for such failure to report for work;

E. Absence from work because of lay-off or any other reason for six (6) months in the case of an employee with less than one (1) year of service when the absence began, or twelve (12) months in the case of all other employees except that this provision shall not apply in the case of an employee on an approved leave of absence, or absent from work because of illness or injury covered by duty disability or ordinary disability benefits;

F. Failure to notify the Sheriff/Designee in writing within nine (9) calendar days of the employee's intent to report to work upon recall from lay-off, or failure to report for work within sixteen (16) calendar days, after notice to report for work is sent by registered or certified mail, or by telegram, to the employee's last address on file with the Personnel Office where the employee works;

G.    Engaging in gainful employment while on an authorized leave of absence, unless permission to engage in such employment was granted in advance by the Sheriff/Designee in writing.

## Section 4.5 Seniority List:

Every six (6) months, the Employer will furnish the Union a list showing the name, employee number, address, classification and seniority date of each employee. The Sheriff shall post a similar list without employee addresses. Within thirty (30) calendar days after the date of posting, an employee must notify the Employer of any error in his/her seniority date as it appears on that list or it will be considered correct and binding on the employee and the Union from that time forth and forever.

## ARTICLE V
## Rates of Pay

## Section 5.1 Payroll Grades:

Employees in the Payroll Grades set forth in Appendix A to this Agreement shall receive salaries as detailed in the Appendix.

Deputy Sheriffs who are assigned as Civil Process Servers, and those in Child Support Warrants, Child Support Civil Process, Warrants, Levies, Evictions, S.W.A.P. Units and Canine Unit, will receive salaries in accordance with Payroll Grade D2B.

When Deputy Sheriffs move between Grade D2 and Grade D2B, they will retain their existing step placement and anniversary dates. Movement between Grade D2 and Grade D2B will be governed by the bidding procedures of the collective bargaining agreement.

All probationary employees shall be paid in accordance with the D2 Payroll Grade.

## Section 5.2 Classification System:

It is understood by all parties that the authority of the County to classify positions is expressly set forth by State Statute, [ILL. REV. STAT. 1985, Ch. 34, par. 1102].

In recognition of this statutory authority, it is further understood that classifications of employees are not subject to the Grievance Procedure found in Article XI of this Agreement.

Claims that a particular position is misclassified may be handled as part of the budgetary process. Decisions of the Director of Position Classification as to proper classification shall be final.

## ARTICLE VI
### Holidays

### Section 6.1  Designation of Holidays:

A.  The following days are hereby declared holidays, except in emergency and for necessary operations, for all employees in the bargaining unit.

1.  New Year's Day - January 1
2.  Martin Luther King's Birthday - Third Monday in January
3.  Lincoln's Birthday - February 12
4.  Presidents' Day - Third Monday in February
5.  Casimir Pulaski Day - First Monday in March
6.  Memorial Day - Last Monday in May
7.  Independence Day - July 4
8.  Labor Day - First Monday in September
9.  Columbus Day - Second Monday in October
10. Veteran's Day - November 11
11. Thanksgiving Day - Fourth Thursday in November
12. Christmas Day - December 25

It is the intent of the Board of Commissioners of Cook County that all salaried Cook County employees be granted  twelve (12) holidays, or equivalent paid days off per year.  Should a certain holiday fall on Saturday, the preceding Friday shall be set as the holiday; should a certain holiday fall on a Sunday, the following Monday shall be set as the holiday.

B.  In addition to the above, any other day or part of a day shall be considered a holiday when so designated by the Board of Commissioners of Cook County.

C.  In addition to the foregoing paid holidays, employees shall be credited with one (1) floating holiday on December 1 of each year, which may be scheduled in accordance with the procedures for personal day selection.   Use of the floating holiday is restricted to full day increments and cannot be carried over into the next fiscal year. Requests shall not be unreasonably denied.

D.  Employees who work on any one of the six (6) major holidays, i.e., New Year's Day, Memorial Day, July 4 [th], Labor Day, Thanksgiving Day and Christmas Day  shall receive time and one-half (1 ½) for all hours worked, plus an additional day off with pay.

Employees who work on any of the six (6) minor holidays shall receive straight-time pay  for all hours worked plus an additional day off with pay.

E.  Holiday Time is earned when an employee works on a recognized holiday, or a holiday falls on the employee's regular day off.  Holiday Time may be accumulated without limitation during an employee's employment, and may be used at a time

mutually agreed to between the employee and his/her supervisor in time blocks of one hour or more. Employees will not be allowed to cash in Holiday Time at any time, including separation from employment, and Holiday Time that is unused at separation will be lost.

### Section 6.2 Eligibility:

To be eligible for holiday pay, an employee must have worked at least forty (40) hours during the pay period in which the holiday occurs unless the employee was in paid status during such period.

Employees needed to work on a holiday will be obtained from among employees assigned to work within the facility/unit/shift in question whose regular work schedule coincides with the holiday, first by volunteers on the shift selected on the basis of departmental seniority and then, if insufficient numbers volunteer, by volunteers from the facility/unit; and finally, by mandatory assignment in reverse order of departmental seniority by shift. Holiday compensation will not be credited to an employee scheduled to work on a holiday if the member is on the medical roll (except IOD) or absent due to sickness.

### Section 6.3 Holidays in Vacations:

If a holiday falls within an employee's scheduled vacation, such employee, if otherwise eligible, shall be granted an additional day of vacation time.

### ARTICLE VII
### Vacations

### Section 7.1 Vacation Leave:

A. All bargaining unit employees, who have completed one year of service with Cook County, including service mentioned in Paragraph D below, shall be granted vacation leave with pay for periods as follows:

| Anniversary of Employment | Days of Vacation | Maximum Accumulation |
|---|---|---|
| 1st thru 6th yr. | 10 working days | 20 working days |
| 7th thru 14th yr. | 15 working days | 30 working days |
| 15th thru- | 20 working days | 40 working days |

B. Vacation accruals will be carried out in accordance with the biweekly payroll system. Employees must be in a pay status for a minimum of five days in a pay period to accrue vacation time in that period.

C. Employees may use only such vacation leave as has been earned and accrued provided, however, that five (5) working days of the initial vacation allowance may be allowed after the first six (6) months of service. The heads of the County offices, departments, or institutions may establish the time when the vacation shall be taken.

D.   Any employee of the County of Cook who has rendered continuous service to the City of Chicago, the Chicago Park District, the Forest Preserve District, the Metropolitan Sanitary District of Greater Chicago and/or the Chicago Board of Education shall have the right to have the period of such service credited and counted for the purpose of computing the number of years of service as employees of the County for vacation credit only. All discharges and resignations not followed by reinstatement within one (1) year shall interrupt continuous service, and shall result in the loss of all prior service credit. Credit for such prior service shall be established by filing, in the Office of the Comptroller of Cook County, a certificate of such prior service from such former place or places of employment.

E.   In the event an employee has not taken vacation leave as provided by reason of separation from service, the employee, or in the event of death, the employee's spouse or estate, shall be entitled to receive the employee's prevailing salary for such unused vacation periods.

F.   In computing years of service for vacation leave, employees shall be credited with regular working time plus the time of duty disability.

G.   Any Cook County employee who is a reemployed veteran shall be entitled to be credited with working time for each of the years absent due to Military service. The veteran's years of service for purposes of accrual of vacation time in the year of return to employment with Cook County, shall be the same as if employment had continued without interruption by Military Service.

H.   Holidays recognized by the Board of Commissioners of Cook County are not to be counted as part of a vacation.

## Section 7.2 Vacation Preference and Scheduling:

Between the first and fifteenth of November of every year, employees may submit vacation picks for the upcoming calendar year. Vacation picks and scheduling procedures shall be determined by the Employer, but shall at all times be awarded on the basis of seniority and in such weekly increments as requested, up to the employee's accrued allotment. It is not necessary that employees have accrued vacation time "on the books" at the time of this vacation preference selection. Employees will, however, be required to submit a 3-part timekeeping/attendance report form requesting approval for said vacation time no later than 15 days prior to the requested time off. Approval will be subject to the employee having the accrued vacation time "on the books" at this time. Individual vacation days shall be scheduled in advance to be consistent with operating necessities and the convenience of the employee, subject to Employer approval.

## ARTICLE VIII
### Welfare Benefits

### Section 8.1 Hospitalization Insurance:

The County agrees to maintain the level of employee and dependent health insurance benefits and employee contributions toward premiums set forth in Appendix C during the term of this agreement, subject to the reopener provisions set forth in Section 16.1 of this agreement . The parties recognize the need for flexibility on the part of the County in dealing with issues of hospitalization benefits and accordingly agree that the County may make changes to its current policy with respect to such matters as carriers and cost containment measures provided that such changes do not effectively and substantially reduce the levels of benefits or increase the current levels of employee contribution to premium set forth in Appendix C.

Insurance Opt-Out: Employees who opt-out of County insurance shall be paid $800.00 at the beginning of the fiscal year.

### Section 8.2 Sick Leave:

A.  Sick leave accruals will be carried out in accordance with the biweekly payroll system. Employees must be in a pay status for a minimum of 5 days in a pay period to accrue sick time in that period. Accrued sick leave will carry over if employees change offices or departments within the County as long as there is no break in service longer than thirty (30) days.

B.  Sick leave may be accumulated to equal, but at no time to exceed, one hundred seventy-five (175) working days, at the rate of twelve (12) working days per year. Records of sick leave credit and use shall be maintained by each office, department, or institution. Severance of employment terminates all rights for the compensation hereunder. Amount of leave accumulated at the time when any sick leave begins shall be available in full, and additional leave shall continue to accrue while an employee is using that already accumulated.

C.  Sick leave may be used for illness, disability incidental to pregnancy, or non-job related injury to the employee; appointments with physicians, dentists, or other recognized practitioners; or for serious illness, disability, or injury, in the immediate family of the employee. Sick leave may be used as maternity or paternity leave by employees.

D.  After five (5) consecutive work days of absence due to illness, employees may be required to submit to their facility/unit assistant chief/director or their designee, a doctor's certificate as proof of illness, and may be required to undergo examination by the Employer's physician.

For health related absences of less than five (5) consecutive work days, a doctor's statement or proof of illness will not be required except in individual instances where the Sheriff has sufficient reason to suspect that the individual did not have a valid heath reason for the absence. If indicated by the nature of a health related absence, examination by the Employer's physician may be required to make sure that the employee is physically fit for return to work.

E. If, in the opinion of the Sheriff/Designee, the health of an employee warrants prolonged absence from duty, the employee will be permitted to combine his/her vacation, sick leave and personal days.

F. The employee may apply for disability under the rules and regulations established by the Retirement Board.

## Section 8.3 Disability Benefits:

Employees incurring any occupational illness or injury will be covered by Workers' Compensation insurance benefits. Employees injured or sustaining occupational disease on duty, who are off work as result thereof shall be paid Total Temporary Disability Benefits pursuant to the Workers' Compensation Act. Duty Disability and ordinary disability benefits also will be paid to employees who are participants in the County Employee Pension Plan. Disability benefits will be reduced by any Workers' Compensation Benefits received. Duty disability benefits are paid to the employee by the Retirement Board when the employee is disabled while performing work duties. Benefits amount to seventy-five percent (75%) of the employee's salary at the time of injury, and begin the day after the date the salary stops. Ordinary disability occurs when a person becomes disabled due to any cause, other than injury on the job. An eligible employee who has applied for such disability compensation will be entitled to receive, on the thirty-first (31st) day following disability, fifty percent (50%) of salary. The first thirty (30) consecutive days of ordinary disability are compensated for only by the use of any accumulated sick pay and/or vacation pay credits unless the employee and the Employer otherwise agree. The employee will not be required to use sick time and/or vacation time for any day of duty disability. All of the provisions of this Section are subject to change in conjunction with changes in State laws.

An employee returning from injured on duty within 60 days from the date of injury, shall return to the same facility or unit and in the same payroll classification in which the employee was assigned at the time of the injury. If the employee returns to work within 12 months of the injury, and the employee's position was filled, the employee shall be returned to the same payroll classification, and shall be subject to recall to the facility or unit before other employees are assigned to the facility unit.

In the event a Deputy is injured on duty and is unable to perform his/her duties, the Deputy may be placed on a duty related injury leave until such time as the Deputy is deemed fit to return to duty. During the time the Deputy is on duty related injury leave he/she shall retain all seniority and benefits, to include, but not limited to their credentials and badge; however, the Sheriff retains the right to recall credentials for just cause; and deputies shall surrender their credentials and badge if they are absent from work for more than 180 days (6 months).

## Section 8.4 Life Insurance:

All employees shall be provided with life insurance in an amount equal to the employee's annual salary (rounded to the next $1,000), at no cost to the employee, with the option to purchase additional insurance up to a maximum of the employee's annual salary.

### Section 8.5 Pension Plan:

Pension benefits for employees covered by this Agreement shall be as mandated under 40 ILCS 5/9-101, et seq.

### Section 8.6 Dental Benefits:

The Employer agrees to continue to provide a basic dental insurance plan for its employees and dependents, paid for by the Employer.

### Section 8.7 Employee Assistance Program:

The Employer has established an Employee Assistance Program (EAP) to function as a professional diagnostic and referral service for employees. This program is designed to deal comprehensively with any personal problems of employees which affect their physical or mental health and which may have a negative impact on their work productivity. It is understood that EAP is not intended to be a substitute or alternative to disciplinary action, when such action is warranted.


## ARTICLE IX
## Additional Benefits

### Section 9.1 Bereavement Leave:

A.   Excused leave with pay will be granted, up to three (3) days, to an employee for the funeral of a member of the employee's immediate family or household. For purposes of this Section, an employee's immediate family includes mother, mother-in-law, father, father-in-law, husband, wife, child (including step children and foster children), brothers, sisters, grandchildren, grandparents, spouses, parents or such persons who have reared the employee. Up to an additional two (2) days leave with pay will be granted for an employee to attend a funeral of a member of the employee's immediate family or household where death occurs and the funeral is to be held more than one hundred fifty (150) miles from the Cook County Building located at 118 N. Clark Street, Chicago, Illinois 60602.

B.   Leave requested to attend the funeral of someone other than a member of an employee's immediate family or household may be granted, but time so used shall be deducted from the accumulated vacation or personal leave of the employee making the request.

### Section 9.2 Maternity/Paternity Leave:

Employees shall be granted maternity or paternity leaves of absence to cover periods of pregnancy and post partum child care. The length of such leave, in general, shall not exceed six (6) months, but may be renewed by the Sheriff/Designee.

### Section 9.3 Election Day:

An employee who is a registered voter will receive two (2) hours time off (without pay) during his regular work day so that he/she may vote in any general election. An employee desiring to take such time off shall arrange the exact hours of intended absence with his/her supervisor at least two (2) work days prior to the election.

### Section 9.4 Personal Days:

All employees, except those in a per diem or hourly pay status, shall be permitted four (4) days off with pay each fiscal year. Employees may be permitted these four (4) days off with pay for personal leave for such occurrences as observance of a religious holiday or for other personal reasons. Such personal days shall not be used in increments of less than one-half (½) day at a time. Accruals of personal days will be carried out in accordance with the biweekly payroll system.

Employees entitled to receive such leave, who enter Cook County employment during the fiscal year, shall be given credit for such personal leave at the rate of one (1) day for each full fiscal quarter in pay status; except that two (2) personal days may be used for observance of religious holidays prior to accrual, to be paid back in the succeeding two (2) fiscal quarters. No more than four (4) personal days may be used in a fiscal year.

Personal days shall not be used as additional vacation leave. If the health of an employee warrants prolonged absence from duty, the employee will be permitted to combine personal days, sick leave, and vacation leave.

Personal days may not be used consecutively unless approved by the Sheriff/Designee. Personal days off shall be scheduled in advance to be consistent with operating necessities and the convenience of the employee, subject to Department Head approval.

In crediting personal days, the fiscal year shall be divided into the following fiscal quarters:

> 1st Quarter - December, January, February
> 2nd Quarter - March, April, May
> 3rd Quarter - June, July, August
> 4th Quarter - September, October, November

Severance of employment shall terminate all rights to accrued personal days.

### Section 9.5 Jury Duty:

Approval will be granted for leave with pay for any jury duty imposed upon an employee. Any compensation, however, exclusive of travel allowance received, must be turned over to the employer by the employee.

### Section 9.6 Court Time:
Deputies who attend court while off-duty on behalf of the Employer, shall receive two (2) hours minimum pay, or the actual hours worked, whichever is greater.

### Section 9.7 Family Medical Leave Act:
Employees shall be entitled to family medical leave in accordance with the Family Medical Leave Act. An employee may use accrued paid leave for all or any part of the twelve (12 week unpaid family and medical leave.

### Section 9.8 American With Disabilities Act:
Whenever an employee ( or the Union at the request of an employee) requests an accommodation under the American with Disabilities Act ("ADA"), or an accommodation of an employee is otherwise contemplated by the Employer, the Employer will notify the Union of the request and proposed accommodation.

It is the intent of the parties that any reasonable accommodations adopted by the Employer conform to the requirements of this Agreement where practicable. The Employer may take all steps necessary to comply with the ADA. The parties shall cooperate in resolving potential conflicts between the Employer's obligation under the ADA and the rights of Union. Neither party shall unreasonably withhold its consent to the reasonable accommodation of an employee. Information obtained regarding the medical condition or history of any employee shall be treated in confidential matter.

Nothing in this section shall require the County to take any action which would violate the ADA or any other applicable statute.

## ARTICLE X
### Leaves of Absence

### Section 10.1 Regular Leave:

A.   Leaves of absence without pay may be granted to any full-time Deputy Sheriff. The leave shall be from the position and rank he or she holds at the time the leave is granted and, on termination of the leave, the officer shall be returned to the same rank he or she held at the time the leave was granted provided a vacancy exists. Leaves of absence shall not be granted to any full-time Deputy Sheriff who has not completed his or her probationary period.

B.   All leaves of absence, except for military service, shall be for one year or less, with the privilege of obtaining a new leave at the expiration of the first. Leaves of absence shall be granted by the Sheriff, with notification to the Merit Board. An officer on leave of absence who accepts a position other than that for which the leave is granted, without

the written approval of the Sheriff, shall be deemed to have resigned. An officer who fails to return to his position following the granted leave, or to request and be granted a new leave of absence on or before the expiration of this first leave, shall be deemed to have resigned.

C.   Leaves of absence without pay may be granted for the following reasons and purposes:

1.   Illness of an employee properly certified by a physician acceptable to the Sheriff and the Merit Board; however, the Merit Board may require a member who has applied for such leave to submit to a physical examination by a physician of its choosing;

2.   Active duty in the military or naval service of the United States;

3.   Training in an institution of higher learning;

4.   Other reasons acceptable to the Sheriff and the Board.

Absence from County service on leave without pay for periods in excess of thirty (30) calendar days, all suspensions in excess of thirty (30) calendar days, time after layoffs for more than thirty (30) calendar days but less than one (1) year, all absences without leave shall be deducted in computing total continuous service and will effect a change in the anniversary date.

## Section 10.2  Seniority on Leave:
An Employee on an approved leave of absence shall retain all seniority accrued up to the time of the leave, but shall not accrue pension benefits or additional seniority during the leave (except as may be otherwise provided in the County Pension Plan).

In cases of absence without pay due to ordinary disability, employees will continue to accrue department seniority for job bidding and vacation preference only during the first 90 days of unpaid leave.

## Section 10.3  Retention of Benefits:
An employee will not earn sick pay or vacation credits while on a leave of absence. An employee on a leave of absence except for maternity or paternity leave will be required to pay the cost of the insurance benefits provided in Article VIII in order to keep these benefits in full force and effect during the period of leave. Arrangements for payments of such costs through normal deductions or otherwise must be made with the County's Payroll Office prior to departure on the leave. For the failure to make such arrangements, the Employer may cancel insurance benefits, which will be reinstated upon the employee's return to work, subject to such waiting period and other rules and regulations as may be applicable to the insurance plan.

## Section 10.4  Union Leave:
A leave of absence not to exceed one (1) year without pay, will be granted to an employee who is elected, delegated or appointed to participate in duly authorized business of the Union which

requires absence from the job. Such leave may be extended by mutual agreement. Employees duly elected as delegates of the Union will be allowed time off, without pay, to attend State and National conferences and conventions of the Union, not to exceed ten (10) work days for all employees. Sick pay, vacation and insurance benefits will be provided as set forth in Section 3 of this Article, provided that it will not seriously effect the performance of the office.

## Section 10.5  Military Leave:
Employees who enter the armed services of the United States shall be entitled to all the re-employment rights provided for in the Uniformed Services Employment and Re-employment Rights Act, 38 U.S.C. § 4301, et seq., as amended.

An employee who has at least six (6) months or more of continuous actual service and is a member of the Illinois National Guard or any of the Reserve Components of the Armed Forces of the United States, shall be entitled to leave of absence with full pay for limited service in field training, cruises, and kindred recurring obligations. Such leave will normally be limited to eleven (11) working days in each year. In the event that an employee is required to be absent for military leave in excess of 11 work days, such absences shall be considered excused absences without pay.

All Employees who attend monthly drills on the weekends that are not on their regular days off may work two of their regular days off before attending the drill. If the Employee does not work off days first, the Sheriff/Designee will allow the Employee to take vacation, comp. time, or personal days for the weekend or attend the drill day(s) without pay. The Employee must notify the Sheriff/Designee in writing (To/From) at least 10 working days before the scheduled drill date.

## Section 10.6  Veteran's Conventions:
Any employee who is a delegate or alternate delegate to a National or State convention of a recognized veterans' organization may request a leave of absence for the purpose of attending said convention, providing, however, that any employee requesting a leave of absence with pay must meet the following conditions:

1.  The employee must be a delegate or alternate delegate to the convention as established in the by-laws of the organization.

2.  They must register with the credentials committee at the convention headquarters.

3.  Their name must appear on the official delegate-alternate rolls that are filed at the State headquarters of their organization at the close of the convention.

4.  They must have attended no other convention, with a leave of absence with pay, during the fiscal year.

5.  The employee must produce, upon returning from the convention, a registration card signed by a proper official of the convention, indicating attendance.

## Section 10.7  Approval of Leave:

No request for a leave, as defined in Sections 1 and 4 of this Article, will be considered unless approved by the Sheriff/Designee. The Sheriff/Designee may withhold such approval, if, in his judgement, such absence from duty at the particular time requested would interfere with the conduct of Employer business. Approval of leaves of absence will not be arbitrarily or capriciously denied, providing that the reasons for the leaves are in conformance with the existing policies regarding leaves of absence.

## ARTICLE XI
### Grievance Procedure

## Section 11.1  Policy:

The provisions of this Article supplement and modify the provisions of the Employer's Grievance Procedure applicable to all employees.

The purpose of this Article is to specify the method by which employees may present grievances and seek redress. This policy shall apply to all bargaining unit employees under the jurisdiction of the Employer.

This policy shall apply to all bargaining unit employees without discrimination as to age, sex, marital status, race, creed, color, national origin, physical handicap, political affiliation or political activity.

All employees shall have a right to file a grievance and shall be assured freedom from coercion, restraint, or reprisal.

The term "Employer" as read throughout this procedure refers to both the County and the Sheriff as "Joint Employers." It is recognized that because a joint employer relationship exists, certain grievances are appropriately answered by the elected official, and others by county administration, depending on the subject matter of the grievance.

The Employer is committed to fair employment practices and recognizes its responsibility to review and make reasonable effort to resolve employees' grievances. An employee is encouraged first to discuss the problem with the immediate supervisor. If the employee feels the problem has not been satisfactorily adjusted as a result of this discussion, the employee may advance review in accordance with this grievance procedure.

## Section 11.2  Definition:

A grievance is a difference between an employee or the Union and the employer with respect to the interpretation or application of, or compliance with the terms of this Agreement between the Employer and Union.

An insurance dispute between the employee (or his/her covered dependent) and the processor of claims shall not be subject to the grievance procedure provided for in this Agreement. Employees shall continue to be afforded an opportunity to present appeals of such insurance

disputes to the County in person. The County will endeavor to resolve such disputes with the processor of claims.

## Section 11.3 Representation:

Only the aggrieved employee(s) and/or representatives of the union may present grievances. Employees may take up grievances through Steps One to Three either on their own and individually or with representation by the Union. If an employee takes up a grievance without Union representation, any resolution of the grievance shall be consistent with this Agreement and the Union representative shall have the right to be present at such resolution. A grievance relating to all or a substantial number of employees or to the Union's own interests or rights with the Employer may be initiated at Step Three by the Union.

All discipline emanating from an Internal Affairs Division investigation, or an Inspector General's investigation, that the member wishes to grieve, may be initiated at Step Four of the grievance procedure.

## Section 11.4 Grievance Procedure Steps:

The steps and time limits as provided in the Employer's Grievance Procedure are as follows:

| Step | Submission Time Limit This Step calendar days | To Whom Submitted | Time Limits Meeting calendar days | Response calendar days |
|------|-----------------------------------------------|-------------------|-----------------------------------|------------------------|
| 1 | 15 days | Asst. Chief/ Designee | 7 | 7 |
| 2 | 10 days | Division Chief/Designee | 10 | 10 |
| 3 | 10 days | Chief Deputy/Designee | 30 | 30 |
| 4 | 10 days | Sheriff/Designee or Chief Bureau of Human Resources/Designee | 30 | 30 |
| 5 | 30 days | Impartial Third Party | 30 | 30 |

## Step One

1. The employee obtains a Grievance Form from the Union Steward.

2. The employee writes the nature of the grievance and the resolution sought on the Grievance Form, signs it, returns it to the Steward who will present it to the Assistant Chief/Designee. The employee, steward, and Assistant Chief/Designee will each keep their appropriate copy.

The above requirement for the filing of Step One Grievances will be satisfied at the following facilities by the faxing of the Step One Grievance to a number designated by the Employer within the prescribed time limits:

    A. CIVIL PROCESS DISTRICT #2
    B. CIVIL PROCESS DISTRICT #4
    C. CIVIL PROCESS DISTRICT #5

3. Within the seven (7) calendar days after receipt, the assistant chief/designee shall meet with the employee to discuss the grievance.

4. Within the seven (7) calendar days after the meeting, the assistant chief answers the grievance on the Grievance Form and transmits the answer to the employee.

5. If the answer is satisfactory, the grievance procedure is concluded at Step 1.

6. If the answer is not satisfactory, the employee may, within the ten (10) calendar days after receipt, or if no answer is given, advance the grievance to Step 2.

7. Failure to advance the grievance within ten (10) calendar days after the Step 1 answer is due concludes the grievance procedure.

## Step Two

1. On the Grievance Form, the employee checks that the answer is not satisfactory, writes the date referred to Step 2, signs the form, and returns it to the Steward. The Steward presents the grievance to the Division Chief/Designee.

2. Within the ten (10) working days after receipt, the Division Chief/Designee shall meet with the employee to discuss the grievance. Within the ten (10) calendar days after the meeting specified in (2) above, Division Chief/Designee writes the final answer on the Grievance Form and transmits the answer to the employee.

3. If the answer is satisfactory or if the employee fails to advance the grievance within ten (10) calendar days after the Step 2 answer is due, the grievance procedure is concluded.

## Step Three

1. Within ten (10) calendar days after receipt of the Step 2 answer, the employee states that the answer given at Step 2 is unsatisfactory, including specific reasons as to why the answer given at Step 2 is unsatisfactory, writes the date referred to Step 3, signs the form, and returns it to the Steward. The Steward presents the grievance to the Chief Deputy/Designee.

2.    Within thirty (30) calendar days of receipt of the letter, the Chief Deputy/Designee will hear an appeal and submit a written decision to the employee within 30 calendar days.

3.    If the answer is satisfactory or if the Union fails to advance the grievance within ten (10) calendar days after the Step 2 answer is due, the grievance procedure is concluded.

## Step Four

1.    Within ten (10) calendar days after receipt of the Step 3 answer, the Employee states that the answer given at Step 3 is unsatisfactory, including specific reasons as to why the answer given at Step 3 is unsatisfactory, writes the date referred to Step 4, signs the form, and returns it to the Steward. If the Union concurs the Steward will advance the Grievance to the Sheriff/Designee.

2.    Within thirty (30) calendar days of receipt of the letter, the Sheriff/Designee will hear an appeal and submit a written decision to the employee within 30 calendar days.

## Step Five - Impartial Arbitration

1.    If the Union is not satisfied with the Step 4 answer, it shall within thirty (30) days after receipt of the Step 4 answer submit in writing to the Employer notice that the grievance is to enter impartial arbitration. If the two parties fail to reach agreement on an Arbitrator within ten (10) days, the Employer and Union may request the Local Labor Relations Board, the Federal Mediation and Conciliation Service or the American Arbitration Association to provide a panel of arbitrators. The parties agree to utilize the Local Labor Relations Board and Federal Mediation and Conciliation Service before resorting to the American Arbitration Association. Each of the two parties will confer within 7 days of receipt of the panel to alternately strike one name at a time from the panel until only one shall remain. The remaining name shall be the Arbitrator. The Union and the Employer will make arrangements with the Arbitrator to hear and decide the grievance without unreasonable delay subject to the general orders, rules and regulations of the Department. The decision of the Arbitrator shall be binding.

2.    Expenses for the Arbitrator's services and the expenses which are common to both parties to the arbitration shall be borne equally by the County and the Union. Each party to an arbitration proceeding shall be responsible for compensating its own representatives and witnesses.

3.    The Arbitrator, in his/her opinion, shall not amend, modify, nullify, ignore or add to the provisions of this Agreement. The issue or issues to be decided will be limited to

those presented to the Arbitrator in writing by the Employer and the Union. His/her decision must be based solely upon his interpretation of the meaning or application of the express relevant language of the Agreement.

## Section 11.5  Discipline - "Fast Track" Arbitration:

For all discipline involving suspensions of from four (4) through thirty (30) days, as provided in Article XIV, Section (8) (2), the following procedures will apply:

A.   Following receipt by the Union of the Step 4 answer, either party may request a panel of seven (7) arbitrators from the Federal Mediation and Conciliation Service (FMCS). The party filing such request shall designate to FMCS that all panel members shall reside in the Chicago-land area and be member of the National Academy of Arbitrators. The arbitrator shall be selected using the alternate strike method.

B.   The parties will endeavor to schedule such grievances to be heard sequentially in the same arbitral session and before the selected arbitrator whenever practicable.

C.   All hearings will be held as close to the grievant's worksite as is practicable. The employer will, upon reasonable notice from the Union, release from duty any employees requested by the Union as representatives or witnesses.

D.   The hearing shall be informal. There will be no stenographic recording of the proceedings and the parties will file no post-hearing briefs unless otherwise agreed.

E.   The arbitrator will issue a short, written award, usually no more than five (5) pages, setting out briefly the findings of fact and the conclusions in support thereof.

## Section 11.6  Time Limits:

The initial time limit for presenting a grievance shall be fifteen (15) days. Time limits may be extended by mutual agreement in writing between the employee and/or the Union and the Employer.

## Section 11.7  Stewards:

A.   The Union will advise the Employer in writing of the names of the Stewards and alternates for the locations as listed in Paragraphs B and C, and shall notify the Employer promptly of any changes. Upon obtaining approval from their supervisor before leaving their work assignment or area, Stewards will be permitted to handle and process grievances referred by employees at the appropriate steps of the grievance procedure during normal hours without loss of pay, provided that the operations of the Employer are not adversely affected. In all cases the primary mission of the Employer and proper manpower considerations shall be controlling. It is mutually recognized that the principle of proportional representation is a sound and sensible basis for determining the number of stewards.

B.   The following locations shall each have up to two (2) Stewards only, plus alternates:

- Daley Center (Courts and County Building)
- 26th and California (Includes Canine Unit and Jury Transportation)

C.   The following locations and units shall have one (1) Steward, and one (1) alternate. It is understood that an Alternate shall only act in the absence of the Steward. In the absence of the Steward and Alternate Steward, a designated representative shall be appointed by the Union:

Daley Center Civil Process
District 2  (Skokie Courts)
District 2  (Skokie Civil Process)
District 3  (Rolling Meadows Courts)
District 4  (Maybrook Courts )
District 4  (Maybrook Civil Process)
District 5  (Bridgeview Courts)
District 5 (Bridgeview Civil Process)
District 6 (Markham Courts and Training)
Police Courts North
Police Courts South
Domestic Violence Courts
Traffic Court
Juvenile
Mental Health Court
Warrants, Levies, and Evictions
Warrants, Levies, Evictions (6 pm shift)
S.W.A.P.
Child Support Civil Process

The County recognizes that Teamsters Local 714 shall be granted a total of one (1) Chief Steward for coverage of its members county-wide to handle grievances in conjunction with the district steward. Said Chief Steward will have the time necessary to act in this manner without loss of pay or benefits. Said Chief Steward shall serve on all safety panels.

It is further mutually agreed that the Local Union will, within two (2) weeks of the date of the signing of this Agreement, serve upon the County a written notice listing the Union's authorized representatives employed by the County who are to deal with the County on behalf of the Union, making commitments for the Union. The Union shall not be liable for any activities unless so authorized. The Union shall notify the County of any changes of these representatives during the term of this Agreement.

D.    It is understood by the Union and the Employer that the location for stewards referred to in this Section 6 are applicable only to this Section and not to Article XV of this Agreement.

## Section 11.8 Union Representatives:

Duly authorized business representatives of the Union will be permitted at reasonable times to enter the appropriate County facility for purposes of handling grievances or observing conditions under which employees are working and addressing roll calls. These business representatives will be identified to the Sheriff/Designee in a manner suitable to the Employer on each occasion will first secure the approval of the Sheriff/Designee to enter and conduct their business so as not to interfere with the operation of the Employer. The Union will not abuse this privilege, and such right of entry shall at all times be subject to general Sheriff's department rules applicable to non-employees. Said approval shall not be denied arbitrarily or capriciously or without cause.

## ARTICLE XII
## Continuity of Operation

### Section 12. 1 No Strike:

The Union will not cause or permit its members to cause, and will not sanction in any way, any work stoppage, strike, picketing or slowdown of any kind or for any reason, or the honoring of any picket line or other curtailment, restriction or interference with any of the Employer's functions or operations; and no employee will participate in any such activities during the term of this Agreement or any extension thereof.

### Section 12.2 Union Responsibility:

Should any activity prescribed in Section 1 of this Article occur, which the Union has or has not sanctioned, the Union shall immediately:

    (a)    publicly disavow such action by the employees or other persons involved;

    (b)    advise the Employer in writing that such action has not been caused or sanctioned by the Union;

    (c)    notify the employees stating that it disapproves of such action instructing all employees to cease such action and return to work immediately;

    (d)    take such other steps as are reasonably appropriate to bring about observance of the provisions of this Article, including compliance with reasonable requests of the Employer to accomplish this end.

### Section 12.3 Discharge of Violators:

The Employer shall have the right to discharge or otherwise discipline any or all employees who violate any of the provisions of this Article. In such event, the employee or employees,

or the Union in their behalf, shall have no recourse to the grievance procedure, except for the sole purpose of determining whether an employee or employees participated in the action prohibited by this Article. If it is determined that an employee did so participate, the disciplinary action taken by the Employer may not be disturbed.

## Section 12.4 No Lock-Out:
The Employer agrees that it will not lock out its employees during the term of this Agreement or any extension thereof.

## Section 12.5 Reservation of Rights:
In the event of any violation of this Article by the Union or the Employer, the offended party may pursue any legal or equitable remedy otherwise available, and it will not be a condition precedent to the pursuit of any judicial remedy that any grievance procedure provided in this Agreement be first exhausted.

## ARTICLE XIII
### Training and Education

## Section 13.1 Tuition Reimbursement:
Employees making application for specific courses shall follow the Cook County Tuition Reimbursement Policy. It is understood that employees eligible for other forms of assistance may also qualify for tuition reimbursement in some form, after review by the Department of Personnel.

## Section 13.2 In-Service Training:

A.  The Employer agrees to provide all appropriate training to all personnel commensurate with their inmate, defendant, citizen contact, and further agrees to continuously update such training in order that the employee may develop the skills, knowledge and ability needed in the performance of their official duties.

B.  The employee shall provide the Sheriff's Office with proper documentation of any training the employee has completed, and this documentation may be used as a reference for qualifications for other jobs within the Sheriff's Office.

C.  The Employer agrees to provide each officer with training bulletins, updates, etc., during the year.

D.  Whenever a Deputy is required to attend in-service training (including qualifying with their weapons) it shall be the responsibility of the Sheriff/Designee to schedule such in service training without loss of pay or benefits to the affected Deputy.

E.   Should a Deputy be required to attend in-service training (including qualifying with their weapons) after his/her tour of duty the affected Deputy shall be compensated a minimum of three (3) hours compensatory time. Should a Deputy fail to qualify on his/her initial attempt or not satisfactorily complete any subject of in-service training (including any testing), one return to the in-service training facility for re-qualification, remedial training, or testing shall be on the employer's time. All subsequent qualifying dates or in -service training dates shall be on the Deputy's own time and he/she must qualify or successfully complete any subject of in-service training (including any testing) within 60 days after failing on the original scheduled date.

F.   Approved auxiliary weapons qualification will be on the employee's own time.

G.   The Employer will endeavor to provide specific duty training to street units and court security individually.

## ARTICLE XIV
### Miscellaneous

### Section 14.1  No Discrimination:
The Employer and the Union agree that neither shall discriminate in employment by reason of race, color, religion, national origin, political belief or activity, age, sex, marital status or sexual orientation.

### Section 14.2  Health and Safety:
The Employer recognizes the needs of employees to work in a clean, safe and healthy environment.

The Employer agrees that employees will not be assigned to any known unsafe operation or to operation of unsafe equipment. It shall be the responsibility of the employee involved to report any unsafe operation to his/her immediate supervisor. Specific complaints concerning safety shall be put in writing by the employee.

If the employee's complaint is not satisfied, he/she shall notify the Union steward, who shall meet and discuss the complaint with the immediate supervisor without undue delay.

The Employer will continue to make reasonable provisions for the health and safety of its employees during their hours of employment. The Employer also appreciates suggestions from employees concerning health and safety matters, and will meet periodically with the Union to discuss same.

In addition, the Sheriff's Training Division shall include in its training program the issue of AIDS in the workplace.

Employees required to perform body searches on individuals in custody at detention centers shall be provided with surgical gloves.

### Section 14.3  Bulletin Boards:
The Employer will make bulletin boards available for the use of the Union in non-public locations.  The Union will be permitted to have posted on these bulletin boards notices of a non-controversial nature, but only after submitting them to the Sheriff/Designee for approval and posting, provided such approval shall not be unreasonably denied.  There shall be no distribution or posting by employees of advertising or political material, notices or other kinds of literature on the Employer's property other than herein provided.

### Section 14.4  Partial Invalidity:
In the event any of the provisions of this Agreement shall be or become invalid or unenforceable by reason of any Federal or State law or local ordinance now existing or hereinafter enacted, such invalidity or unenforceability shall not affect the remainder of the provisions hereof.  The parties agree to meet and adopt revised provisions which would be in conformity with the law.

### Section 14.5  Sub-Contracting:
It is the general policy of the Employer to continue to utilize its employees to perform work they are qualified to perform.  The Employer may, however, subcontract where circumstances warrant.  The Employer also reserves the right to enter into mutual aid and assistance agreements with other units of government.

The Employer will advise the Union at least 3 months in advance when such changes are contemplated and will discuss such contemplated changes with the Union, pursuant to the Illinois Public Labor Relations Act of 1984.  The Employer will work with the Union in making every reasonable effort to place adversely affected employees into other bargaining unit positions.

It is understood by the parties that the right to contract or subcontract shall not be used for the purpose or intention of undermining the Union.

### Section 14.6  Credit Union:
The Employer agrees to deduct from the wages of employees who so authorize, and remit payments to either the credit union offered by the County or by the Union.  As of the effective date of this agreement, those credit unions are Credit Union One (County Credit Union), and Synergy Partners Credit Union (Teamsters Local Union 714 sponsored Credit Union).

## Section 14.7  Personnel Files:

Upon written request to the Department Personnel Office, an employee may inspect his/her personnel file at any time mutually acceptable to the employee and employer. Copies of materials in an employee's personnel file shall be provided to the employee upon request, subject to any applicable laws or rulings. It is understood that only one official personnel file shall exist for each employee. An employee may file a written rejoinder, to be placed in his/her personnel file, concerning any matter in the file.

## Section 14.8  Discipline:

The Employer shall not take any disciplinary action against an employee without just cause. Employees who are to be or may be disciplined are entitled to Representation consistent with the Bill of Rights. The Union and the Employer agree that discipline should be timely, progressive and accompanied by counseling where appropriate. It is understood that employees are subject to the general orders, rules and regulations of the Employer.

Upon hire, the Employer shall provide each Deputy Sheriff covered by this Agreement with an up-to-date copy of all general orders, which shall be in a 3-ring binder. Upon issuance of any newly published General Order(s) or addenda, each Deputy Sheriff covered by this agreement will be tendered a copy of such Order(s) and/or addenda. Each Deputy Sheriff shall sign for his/her copy upon receipt of these general orders and/or addenda. A current copy of all General Orders will be kept by each Assistant Chief in each unit/facility for reference by the Deputies.

Forms of Discipline:

1. Summary Punishment: The employer shall reserve the right to implement summary punishment, reprimand, and suspensions of up to 3 days. Reprimands shall be grievable, up to and including Step 3 of the Grievance Procedure.

   Deputies who are disciplined or recommended for discipline under Summary Punishment may choose to appeal either through the Sheriff's "Summary Punishment Action Request" form (SPAR) or the Grievance Procedure, but not both remedies. If the SPAR form is chosen, the steps of appeal are outlined by the Court Services Department General Order 1375.1 and D.C.S.I. General Order 3.3 ADD VII (whichever is applicable). If the Grievance Procedure is chosen, the steps outlined elsewhere in this Agreement shall be followed. In either case, the Deputy shall check the appropriate box on the SPAR form, indicating which appeal process, if any, he chooses to take.

   A SPAR will be disregarded and removed from the employee's personnel file after eighteen (18) months from the occurrence, provided that the employee has received no other SPARs during this eighteen (18) month period of time.

2. Suspension of up to and including 29 days: Any suspension imposed by the Employer on an Employee up to and including 29 days, may be appealed at all steps of the grievance procedure or the Sheriff's appeal procedure as outlined in General Order 7000, but not both remedies.

3.    <u>Suspensions in excess of 29 days, up to and including Termination:</u>  Suspensions in excess of 29 days, up to and including termination, are subject to the jurisdiction of the Cook County Sheriff's Merit Board and may not be appealed through the grievance procedure in this Agreement.

## Section 14.9 Cook County Sheriff's Merit Board:

A.    It is understood that employees are subject to the Rules and Regulations of the Cook County Sheriff's Merit Board. Any disciplinary actions referred to the Merit Board for hearing are not subject to the terms and conditions of this Agreement and may not be appealed through the grievance procedure in this Agreement.

B.    Pre-Trial Procedures

    (1)(a)  Every employee of the Sheriff's office charged in a complaint before the Merit Board shall be furnished, upon his/her request, in writing, on or before 14 days from the date of service of such complaint and notice of hearing, with a complete copy of the internal investigative file from Internal Affairs Division (IAD).

    (1)(b)  The Employer shall have no right to suspend an employee without pay during the pendency of a complaint before the Merit Board unless the Employer fully complies with the requirements of the previous paragraph (paragraph (1) (a)) of this Section 9 with regard to the furnishing of the IAD investigative file on or before the 14th day from the date of service of the complaint and notice of hearing.

## Section 14.10 Job Openings:

The Employer recognizes that bargaining unit employees may wish to pursue careers as Correctional Officers or County Police Officers. To this end, the Employer encourages all Deputies to make application to the Merit Board for the position of Correctional Officer, and the Employer agrees to post advance notice of any and all tests for the position of County Police Officer.

## Section 14.11 Reassignment Under Investigation:

The Department may, at its discretion, reassign any employee while investigation of possible wrongful behavior is completed. Such assignment shall not be precedent setting.

## Section 14.12 Use of Official Facilities and Services:

Designated union representatives shall be allowed to request meeting space for union matters at the various facilities, during non-work hours, subject to availability and the approval of the Sheriff/designee. Upon such request, the Sheriff/designee will endeavor to find appropriate space. It is understood that any cost incurred for the cleaning or maintenance of such facilities after such use will be borne by the Union.

## Section 14.13 Indemnification:

A. Employee Responsibility
The Employer shall be responsible for, hold officers harmless from and pay for damages or moneys which may be adjudged, assessed, or otherwise levied against any officer covered by this Agreement, subject to the conditions set forth in Section D.

B. Legal Representation
Officers shall have legal representation by the Employer in any civil cause of action brought against an officer resulting from or arising out of the performance or execution of his/her duties and within the scope of his/her employment, or in the furtherance of the business of the Employer. Civil causes of action which arise from acts committed by the Officer solely for his/her own benefit and which are not ordered, authorized, directed or sanctioned by the Employer shall not, for purposes of this document, be considered within the scope of the Officer's employment, not pursuant to the performance of his/her duties.

C. Cooperation
Officers shall be required to cooperate with the Employer during the course of the investigation, administration or litigation of any claim arising under this Section.

D. Applicability
The Employer will provide the protections set forth in Sections A and B above so long as the officer is acting within the scope of his employment and where the officer cooperates, as defined in Section C with the County of Cook in defense of the action or actions or claims.

## Section 14.14 Uniform Allowance:

Effective December 1, 1998, the employer agrees to provide a uniform allowance of $650 per year for all uniformed Deputy Sheriffs which shall be paid in October of each year. Deputy Sheriffs not required to wear a uniform shall receive no uniform allowance.

## Section 14.15 Automobile Allowance:

Employees who are regularly required to use personally owned automobiles shall continue to receive an adequate amount of gasoline. Other employees who occasionally may be required to use personally owned automobiles in the course of their employment shall be reimbursed in accordance with the Cook County Travel Expense Reimbursement Policy. Such rate shall be adjusted, as necessary, to ensure that employees are paid the maximum allowable from time to time by the Internal Revenue Service, as approved by County policy.

## Section 14.16 Payday:

Employees will be paid on a bi-weekly basis. The Employer will attempt to have the checks available to employees as early in the shift as possible.

### Section 14.17 Radios:
The Employer will make every reasonable effort to provide radios to all street units who request same.

### Section 14.18 Requests for Time Off:
Manpower permitting, requests for use of accrued vacation time, compensatory time and/or personal days may be granted on less than 72 hours notice.

## ARTICLE XV
## Job Posting and Transfers

### Section 15.1 Vacancy:
A recognized vacancy for the purpose of this article exists when an employee is transferred, resigns, retires, dies, is discharged, when there are new facilities/units/shifts created, or when the Employer increases the number of employees in a facility/unit/shift, except for details for not more than 60 days. (Shift shall include day-off group). An assignment within a facility, unit and shift or within a district of the Civil Process Division is not a recognized vacancy. The Employer shall determine whether or not a recognized vacancy shall be filled. If and when the employer determines to fill a recognized vacancy, this article shall apply. Further, there is no recognized vacancy created as a result of emergencies, or when an employee is removed for disciplinary reasons for up to 30 days. When an employee is suspended and removed for disciplinary reasons for more than 30 days a recognized vacancy is created. A successful bidder may not bid for another recognized vacancy for one (1) year.

Assignments of starting times outside the normal starting time in a facility or unit shall be filled by volunteers from the shift and day off group in order of seniority. If there are no volunteers, employees will be assigned in inverse order of seniority by shift and day off group.

It is understood that openings created as a result of an employee filling a recognized vacancy, shall be offered to employees within the facility/unit by seniority. All resulting vacancies shall be filled within the facility/unit first by volunteers on the basis of seniority. Remaining vacancies shall be filled by reverse seniority.

### Section 15.2 Facilities/Units Open to Posting and Bidding Process:

1. SUBURBAN DISTRICT COURTS #2
2. SUBURBAN DISTRICT COURTS #3
3. SUBURBAN DISTRICT COURTS #4
4. SUBURBAN DISTRICT COURTS #5
5. SUBURBAN DISTRICT COURTS #6
6. POLICE COURTS NORTH (CITY OF CHICAGO)
   (INCLUDES MENTAL HEALTH COURT)

7. POLICE COURTS SOUTH (CITY OF CHICAGO)
8. CRIMINAL COURTS BUILDING (26th & California) (INCLUDES JURY TRANSPORTATION UNIT)
9. DOMESTIC VIOLENCE COURT
10. DALEY CENTER (INCLUDES COUNTY BUILDING)
11. TRAFFIC COURT
12. JUVENILE COURT (1100 S. Hamilton)
13. a. CIVIL PROCESS DISTRICT #1
    b. CIVIL PROCESS DISTRICT #2
    c. CIVIL PROCESS DISTRICT #4
    d. CIVIL PROCESS DISTRICT #5
14. CHILD SUPPORT CIVIL PROCESS
15. WARRANTS, EVICTIONS AND LEVY
16. COMMUNITY SERVICE (SWAP)
17. CANINE UNIT

On a voluntary basis, deputy sheriffs will be permitted to permanently switch shifts within the Warrants, Levy and Evictions unit.

No employee will be permitted to perform Levy duties until the employee has completed one year of service in Warrants, Levy and Evictions Unit and demonstrates the ability to perform the Levy duties.

## Section 15.3 Posting of Vacancies and Bidding:

Whenever the employer determines to fill a recognized vacancy in the facilities/units in Section 2 above, the vacancy will be posted and filled in the following manner:

A. All vacancies shall be posted for a minimum of ten (10) working days in all locations, and in plain view; provided, vacancies in units which are specific to a single facility will be posted in the facility for a maximum of ten (10) working days and will only be posted in other locations if a successful bidder cannot be found from within the facility in accordance with paragraph C of this Section.

B. In order to be considered for the job vacancy interested employees must submit their bids in writing to the Department of Personnel Office within the ten (10) working days posting period.

C. All vacancies will first be filled by the most senior employee who bids thereon, provided said employee has the ability to perform the job.

D. In the event there are no bidders or no bidders with the ability to do the job, the employer may fill a recognized vacancy at his discretion with the least senior employee with the ability to do the job or with any consenting employee.

Team714CSDS

34

E.   The Employer may temporarily assign employees regardless of seniority, without being required to post said temporary assignment, provided that at the time of assignment it is anticipated that the assignment will not exceed 60 calendar days, and provided further that the position will be immediately posted after it has been temporarily filled for more than 60 calendar days. The temporarily assigned employee will be reassigned to the position from which he was transferred upon the completion of the temporary assignment. Temporary assignments will not be used to avoid job posting and bidding. It is understood that union stewards will not be temporarily assigned under this Section unless there is an extreme emergency requiring such action. The Union will be notified before such action is taken.

F.   It is recognized that the Employer shall fill a vacancy with the successful bidder within 70 days except in cases of exceptional circumstances.

## Section 15.4  Probationary and Administrative Unit Employees:

A.   Notwithstanding any other provision of this Article XV the Employer has the exclusive right, in his sole discretion, to fill a recognized vacancy with any probationary employee without posting the vacancy for bidding.

B.   The last position held by probationary employees at the completion of their probation, shall be considered a vacancy. Such vacancy shall be posted for bidding within 70 days after such probationary employee completes his or her probationary period.

C.   Positions in the following four administrative units are exempt from this Article and will not be posted for bidding: (1) Internal Affairs; (2) Personnel; (3) Research and Development and (4) Training. No vacancy in these administrative units will be a recognized vacancy under Section 1. Employees who are transferred out of any one of the four exempt administrative units may not grieve or challenge the transfer or reassignment.

## Section 15.5  Transfers:
It is recognized that the employer has the right to transfer or reassign employees for just cause including but not limited to inadequate job performance that seriously affects operations.

## Section 15.6  Exceptions to the Requirements of Job Posting, Bidding and Transfers:
Notwithstanding any other provision of this Article XV, including the posting and bidding provisions, the parties agree:

A.   During the term of this Agreement the Employer has the exclusive right, in his sole discretion and for any reason, to fill any recognized vacancy or transfer to such vacancy up to and including 25 employees during the first contract year, 25 employees during the second contract year and 25 employees during the third contract year; provided, no employee shall be transferred or reassigned under this Section involuntarily. The

Employer will notify the Union in writing within fourteen (14) days of such transfers. The Employer reserves the right to carry over any of the unused transfers.

1. Under the provisions of Paragraph A of this Section 6 the Employer can -

   a. fill any recognized vacancy with any employee who has completed his or her probationary period, without posting and bidding the vacancy.

   b. transfer any employee who has completed his or her probationary period from any one of the facilities/units to any other facility/unit, without posting and bidding the vacancy.

B. The numbers of employees referred to in Paragraph A of this Section 6 do not include:

   1. The assignment or transfer of probationary employees during their probationary period.

   2. The filling of vacancies or the transfer of employees in the four administrative units referred to in Section 4 of this Article XV.

   3. Transfers of employees for just cause including inadequate job performance that seriously affects operations.

   4. Reassignment of employees under investigation under Section 11 of Article XIV of this Agreement.

C. It is understood that the transfer of an employee from one facility/unit to a recognized vacancy in another facility/unit is only a single filling/transfer for purposes of Paragraph A of this Section 6.

D. The exercise of the Employer's exclusive rights under this Section 6 are not grievable, except for claims of violation of paragraph A above.

**Section 15.7 Notification:**
The employer shall keep a record of all postings for 90 days in the Personnel Office which shall be available for inspection by the Chief Union Steward and/or a Union official once every three months at a date and time mutually agreeable to the Employer and the Union.

### ARTICLE XVI
### Duration

**Section 16.1 Term:**
This Agreement shall become effective on December 1, 2006 and shall remain in effect thru November 30, 2010. It shall automatically renew itself from year to year thereafter unless either party shall give written notice to the other party not less than ninety (90) calendar days

prior to the expiration date, or any anniversary thereof, that it desires to modify or terminate this Agreement. It is further agreed that the re-opener(s) for hospitalization insurance is effective December 1, 2008 and December 1, 2009.

## Section 16.2 Notice:

Any notice under this Agreement shall be given by registered or certified mail. If given by the Union, then such notice shall be addressed to the following individuals:

1.    President
      Board of Commissioners of Cook County
      118 North Clark Street - Room 537
      Chicago, IL 60602

2.    Sheriff
      Daley Center - Room 704
      Chicago, IL 60602

3.    Chief, Bureau of Human Resources
      118 North Clark Street - Room 840
      Chicago, IL 60602

If given by the County, then such notice shall be addressed to:

      Local Union No. 714
      International Brotherhood of Teamsters
      6815 W. Roosevelt Road
      Berwyn, IL 60402

Either party may, by like written notice, change the address to which notice to it shall be given.

Signed and entered into this _____10_____ day of ____July_____2007.

COUNTY OF COOK:

By: _____

TODD STROGER, President
Cook County Board of Commissioners


_____

THOMAS J. DART
Sheriff

Attest:

_____

DAVID D. ORR
Cook County Clerk



UNIGN:    The International Brotherhood of Teamsters
          Local Union No. 714

By:

_____
ROBERT A. HOGAN
Secretary-Treasurer


_____
MICHAEL A. VENDAFREDDO
Business Representative


_____
ANTHONY P. O'DONNELL
Chief Union Steward

APPROVED BY BOARD OF
COOK COUNTY COMMISSIONERS

JUL 1 0 2007

COM _____

Team714CSDS                              38

*Exhibit 27*

| | ISSUANCE DATE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| **COOK COUNTY, ILLINOIS COURT SERVICES DEPARTMENT** **GENERAL ORDER** | 10 JUN 05 | 10 JUN 05 | 3200.2 |
| SUBJECT | DISTRIBUTION | RESCINDS | |
| **SECONDARY EMPLOYMENT** | G | G.O. 3200.1 | |
| RELATED DIRECTIVES | | AMENDS | |

## I.  PURPOSE

The purpose of this order is to establish Cook County Sheriff's Office (CCSO) policy relating to secondary employment. This order delineates the circumstances under which Sheriff's Office members may engage in approved secondary employment, and enumerates certain restrictions pertaining to secondary employment.

## II.  DEFINITION

Secondary Employment, as addressed herein, is any activity, external from CCSO operations, for which a CCSO member is compensated in salary, wages, commission, fees or other value, for services performed for an employer or in a self-employed status. For purposes of clarification, the following activities are not considered secondary employment:

A.  Ownership or transfer of stocks, bonds, or other such instruments in which the member has a personal interest, but not as a stockbroker or in a similar fiduciary capacity.

B.  Ownership or transfer of real estate in which the member has a personal interest. For purposes of clarification, acting as a real estate broker, agent or salesperson is considered secondary employment.

C.  Receipt of alimony, separate maintenance, or dependant support payments.

D.  Receipt of annuities, pensions, or income from life insurance or endowment contracts.

E.  Receipt of fees for acting as executor, administrator or conservator of any estate, or for acting as a guardian ad litem or trustee.

F.  Receipt of any inheritance or bequest from any estate or receiving income as a result of a beneficial interest in any trust.

## III.  POLICY

The following policy requirements are essential to the integrity and operational efficiency of the CCSO, and for the protection of its employees, the community and the organization, itself.

CSDGO 3200.2

A. The CCSO may restrict and/or revoke secondary employment for just cause. The duties and obligations of members to the CCSO take priority over any other employment. Members engaging in secondary employment are reminded that their primary responsibility is to the CCSO. All members are subject to recall at any time under emergency conditions; secondary employment will not infringe upon this obligation.

B. Any conflict of interest will be resolved in favor of the CCSO.

C. Employers of CCSO members engaging in secondary employment shall not be afforded preferential treatment by the CCSO or its members.

D. The CCSO will not be liable for the actions or omissions of a member during actual work hours in secondary employment.

E. CCSO members engaged in a security employment capacity will not request or be credited with regular salary or overtime for court related activities (i.e. court appearances, depositions etc.) occurring as a consequence of secondary employment activities.

## IV. ENCLOSURE

A. Secondary Employment Request form.

B. Indemnity Agreement.

## V. PROCEDURES

A. Prior to accepting or commencing any secondary employment, permission must be obtained through the chain of command from the Department Head. Applicants must complete a Secondary Employment Request form and submit the completed document to their immediate supervisor at least fourteen (14) days prior to the effective date of employment (except as provided in V-I of this order).

In emergencies, each Department may approve secondary employment requests submitted less than fourteen days prior to the effective date of the order.

B. CCSO members applying for approval of secondary employment in any security, traffic control or law enforcement related employment shall, in addition to fulfilling all of the requirements pertaining to secondary employment, provide an Indemnity Agreement signed by the prospective employer and accompanied by proof of insurance or self-insurance, assuring performance of the Indemnity Agreement by such secondary employer. No security related secondary employment shall be approved or permitted under any circumstances until a properly executed Indemnity Agreement and proof

of insurance is received by the affected Department Head. An officer of the business or government agency authorized to enter into such an agreement must execute the Indemnity Agreement.

C.     As a condition of receiving approval of a Secondary Employment Request form, the applicant member will authorize the release of all employment information to the CCSO upon request of the CCSO.

D.     The requesting member's immediate Supervisors will review the Secondary Employment Request form and forward the same with attached documentation and recommendation(s) through the chain of command to the appropriate Department Head. The Department Head will review the request and all attached documentation and recommendations for final decision. All supervisors reviewing requests for secondary employment will consider any restrictions or limitations established by this order, the applicant's departmental General Orders or applicable collective bargaining agreement.

E.     All approved secondary employment will be subject to continual and regular review by supervision. This review will include consideration of the following factors:

    1.     Any restrictions or limitations established by this order, the applicant's departmental General Orders or applicable collective bargaining agreement.

    2.     Any disciplinary history or attendance of the requesting member relevant to secondary employment.

    3.     Employment status, including but not limited to revocation of law enforcement powers (if secondary employment is security related), injury on duty, duty accommodations / restrictions, ordinary disability, etc.

    In addition, the affected Department Head shall ensure that a review will be completed upon the occurrence of relevant disciplinary action or attendance deficiency, and upon any change in the member's employment status (i.e. de-deputized, disability, duty restriction /accommodation, etc.). Reviews will be submitted through the chain of command and documented in an appropriate manner by the member's Department Head.

F.     If the secondary employment interferes with the member's ability to perform his/her duties within the CCSO or impairs his/her job performance in any manner, supervisors are required to request revocation of the approved Secondary Employment Request form through the chain of command.

G.     If the member fails to comply with any of the conditions or regulations set forth herein, permission to engage in secondary employment may be revoked.

**CSDGO 3200.2**

H.    Department Heads will advise affected members of any revocation of secondary employment approval in writing.

I.    All approval of secondary employment will expire at 2400 hours on 31 December of each year. CCSO members desiring to continue their secondary employment in the following calendar year will resubmit their request for approval in November of the current calendar year.

The Department will accept a previously executed Indemnity Agreement unless the Department requires the employee to file a new one.

## VI. RESTRICTIONS AND LIMITATIONS ON SECONDARY EMPLOYMENT

Secondary Employment is prohibited under the following conditions unless expressly authorized in writing by the appropriate Department Head or designee.

A.    When the agency, business, firm, or establishment for which the CCSO member intends to work is not properly registered, licensed or insured as required by law.

B.    When a member is a probationary employee, except following promotions within departments (i.e. Officer to Sergeant/Sergeant to Lieutenant, etc.).

C.    Where there is use of Cook County Sheriff's Office official law enforcement authority, equipment, records, documents, files, vehicles or CCSO services as a condition of employment.

D.    When, the secondary employment requires or implies that the CCSO member represents himself/herself as a sworn CCSO member, uses a department vehicle or wears the prescribed department uniform or clothing with the Sheriff's Office name or logo, except when the affected employee has requested and received written consent of the Sheriff or appropriate Department Head permitting such appearance during secondary employment.

Note: Members must request this accommodation in advance, by written submission explaining the nature of employment and the reason for this accommodation.

E.    When the secondary employment will tend to bring either the department or department member into disrespect or disfavor; or cause the member in any way or manner to violate departmental rules or regulations, or any federal, state, county or municipal law or ordinance.

F.    When secondary employment is in an establishment where the primary business is the sale of intoxicating liquor or gambling and:

    1.    the employment is security related, or

2.      the employment includes serving as a bartender and/or dispensing intoxicating liquor, or

3.      the employment includes serving as a cocktail waiter/waitress, or

4.      the CCSO deems that the employment will bring discredit upon the department.

For purposes of this order, secondary employment "in an establishment where the primary business is the sale of intoxicating liquor or gambling" includes working outside the establishment (i.e. parking lot, sidewalk, etc.).

G.      When secondary employment working conditions (including hours of work or location) would tend to impair the member's efficiency, capabilities as an employee or interfere with the member's ability to respond to emergency calls.

H.      When the secondary employment poses a conflict of interest (i.e. acting as an agent of a party pursuing legal action against the CCSO, etc.).

I.      When the CCSO member is on the Medical Roll for any reason, unless expressly authorized in writing by the appropriate Department Head or designee.

J.      When the CCSO member is engaged in a security related secondary employment capacity at the site of a labor dispute, secondary employment will be prohibited for the duration of the job action.

Note:  The relevant Department Head has the discretion to suspend this restriction.

K.      When the secondary employment involves the use of a CCSO canine for any purpose.

L.      When the secondary employment will bring discredit upon the CCSO.

## VII.   RESPONSIBILITY TO THE DEPARTMENT

CCSO Members engaged in approved secondary employment must ensure that the following regulations are strictly complied with:

A.      All CCSO members engaging in secondary employment of any type shall recognize their primary responsibility to the Sheriff's Office and realize that they are subject to call at any time for emergencies, special assignments or overtime duty; and that their secondary employment cannot infringe upon this primary obligation.

CSDGO 3200.2

H.     Department Heads will advise affected members of any revocation of secondary employment approval in writing.

I.     All approval of secondary employment will expire at 2400 hours on 31 December of each year. CCSO members desiring to continue their secondary employment in the following calendar year will resubmit their request for approval in November of the current calendar year.

The Department will accept a previously executed Indemnity Agreement unless the Department requires the employee to file a new one.

## VI.    RESTRICTIONS AND LIMITATIONS ON SECONDARY EMPLOYMENT

Secondary Employment is prohibited under the following conditions unless expressly authorized in writing by the appropriate Department Head or designee.

A.     When the agency, business, firm, or establishment for which the CCSO member intends to work is not properly registered, licensed or insured as required by law.

B.     When a member is a probationary employee, except following promotions within departments (i.e. Officer to Sergeant/Sergeant to Lieutenant, etc.).

C.     Where there is use of Cook County Sheriff's Office official law enforcement authority, equipment, records, documents, files, vehicles or CCSO services as a condition of employment.

D.     When, the secondary employment requires or implies that the CCSO member represents himself/herself as a sworn CCSO member, uses a department vehicle or wears the prescribed department uniform or clothing with the Sheriff's Office name or logo, except when the affected employee has requested and received written consent of the Sheriff or appropriate Department Head permitting such appearance during secondary employment.

Note: Members must request this accommodation in advance, by written submission explaining the nature of employment and the reason for this accommodation.

E.     When the secondary employment will tend to bring either the department or department member into disrespect or disfavor; or cause the member in any way or manner to violate departmental rules or regulations, or any federal, state, county or municipal law or ordinance.

F.     When secondary employment is in an establishment where the primary business is the sale of intoxicating liquor or gambling and:

1.     the employment is security related, or

CSDGO 3200.2

     B.    CCSO member shall ensure that the Secondary Employment Request form is accurate and current at all times. Any cancellation in secondary employment will require that the member notify the appropriate Department Head via written report through the chain of command of such cancellation. Changes in secondary employment will require that the member submit a new Secondary Employment Request form following the procedures set forth in this order.

     C.    If the secondary employment involves a labor controversy of any nature, the CCSO member must immediately notify the appropriate Department Head through the chain of command of the nature of such controversy.

## VIII.  APPLICABILITY

This order is applicable to all CCSO members and is for strict compliance.

**BY ORDER OF:**

**MICHAEL F. SHEAHAN
SHERIFF OF COOK COUNTY**

**BY:**

**ROBERT E. BEAVERS
CHIEF DEPUTY SHERIFF**

*Exhibit #2*

| | Sheriff's Office COOK COUNTY, ILLINOIS **SHERIFF'S ORDER** | ISSUANCE DATE | EFFECTIVE DATE | NO. |
|---|---|---|---|---|
| | | **04 DEC 07** | **09 DEC 07** | **07-2** |
| SUBJECT | | DISTRIBUTION | RESCINDS | |
| **SECONDARY EMPLOYMENT** | | G | | |
| RELATED DIRECTIVES | | | AMENDS | |

## I. PURPOSE

This order establishes the policy and procedures to be followed relating to secondary employment. This order delineates the circumstances under which the Cook County Sheriff's Office employees may engage in approved secondary employment, and enumerates certain restrictions pertaining to secondary employment.

## II. POLICY

The Cook County Sheriff's Office shall require all sworn and civilian employees to confirm their secondary employment status on an annual basis. All Secondary Employment requests shall be impartially evaluated and approved or denied within the guidelines of this order. The Sheriff's Office may revoke secondary employment for cause at any time. This procedure is essential to the integrity and operational efficiency of the Sheriff's Office, and for the protection of its employees, the community and the organization, itself. Any conflict of interest will be resolved in favor of the Sheriff's Office.

## III. ENCLOSURE

A.     Secondary Employment Request form (FCN-3)(Dec. 07)
B.     Indemnity Agreement (FCN-4)(Dec. 07)

## IV. DEFINITIONS

Secondary Employment, as addressed herein, is any activity, external from CCSO operations, for which a CCSO employee is compensated in salary, wages, commission, fees or other value, for services performed for an employer or in a self-employed status. For purposes of clarification, the following activities are not considered secondary employment:

A.     Ownership or transfer of stocks, bonds, or other such instruments in which the employee has a personal interest, but not as a stockbroker or in a similar fiduciary capacity.

B.     Ownership or transfer of real estate in which the employee has a personal interest. For purposes of clarification, acting as a real estate broker, agent or salesperson is considered secondary employment.

CCSO GO 07-2

C.   Receipt of alimony, separate maintenance, or dependant support payments.

D.   Receipt of annuities, pensions, or income from life insurance or endowment contracts.

E.   Receipt of fees for acting as executor, administrator or conservator of any estate, or for acting as a guardian ad litem or trustee.

F.   Receipt of any inheritance or bequest from any estate or receiving income as a result of a beneficial interest in any trust.

## V.   RESPONSIBILITY

The duties and obligations of employees to the Cook County Sheriff's Office (CCSO) take priority over any other employment. Employees engaging in secondary employment are reminded that their primary responsibility is to the CCSO. All employees are subject to recall at any time under emergency conditions; secondary employment will not infringe upon this obligation.

## VI.   PROCEDURE

The Sheriff's Office will require all employees to complete a Secondary Employment Form no later than December 31 of each year.  All approval of secondary employment will expire at 2400 hours on 31 January of each year.  CCSO employees desiring to continue their ongoing secondary employment in the following calendar year will resubmit their request for approval in December of the current calendar year. The Department will accept a previously executed Indemnity Agreement unless the Department requires the employee to file a new one.

A.   Prior to accepting or commencing any secondary employment, permission must be obtained through the chain of command from the Department Head. Applicants must complete a Secondary Employment Request form and submit the completed document to their immediate supervisor at least fourteen (14) days prior to the effective date of employment (except as provided in V-I of this order). In emergencies, each Department may approve secondary employment requests submitted less than fourteen (14) days prior to the effective date of the employment.

B.   CCSO employees applying for approval of secondary employment in any security, traffic control or law enforcement related employment shall, in addition to fulfilling all of the requirements pertaining to secondary employment, provide an Indemnity Agreement signed by the prospective employer and accompanied by proof of insurance or self-insurance, assuring the Indemnity Agreement by such secondary employer. No security related secondary employment shall be approved or permitted under any circumstances until a properly executed

2

Indemnity Agreement and proof of insurance is received by the affected Department Head. An officer of the business or government agency authorized to enter into such an agreement must execute the Indemnity Agreement.

C.   As a condition of receiving approval of a Secondary Employment Request Form, the applicant employee will authorize the release of all employment information to the CCSO upon request of the Sheriff, Office of Professional Review, appropriate Department Head or Director of Personnel.

D.   The requesting employee's immediate Supervisors will review the Secondary Employment Request form and forward the same with attached documentation and recommendation(s) through the chain of command to the appropriate Department Head. The Department Head will review the request and all attached documentation and recommendations for final decision. All supervisors reviewing requests for secondary employment will consider any restrictions or limitations established by this order, the applicant's departmental General Orders or applicable collective bargaining agreement.

E.   All approved secondary employment will be subject to continual and regular review by supervision. Reviews will be submitted through the chain of command and documented in an appropriate manner by the employee's Department Head. This review will include consideration of the following factors to determine revocation of secondary employment.

   1.   Any restrictions or limitations established by this order, the applicant's departmental General Orders or applicable collective bargaining agreement.

   2.   Any disciplinary history, or attendance of the requesting employee relevant to secondary employment including but not limited to revocation of law enforcement powers (if secondary employment is security related). In addition, the affected Department Head shall ensure that a review will be completed upon the occurrence of relevant disciplinary action or attendance deficiency and upon any change in the employee's employment status relevant to discipline (i.e. de-deputized, etc.).

   3.   Employment status changes, including injury on duty, duty accommodations / restrictions, ordinary disability, medical leave, Family and Medical Leave of Absence act (FMLA), etc.

F.   The employee's Department Head shall ensure that a review will be completed upon the occurrence of any change in employment status (i.e. injury on duty, ordinary disability, duty restriction/accommodation, medical leave, FMLA, etc.). Supervisors are required to request suspension of the approved Secondary Employment Request Form for all medical leaves through the chain of

3

command. Reinstatement of the Secondary Request will be considered upon expiration of all medical leaves.

G.    If the secondary employment interferes with the employee's ability to perform his/her duties within the CCSO or impairs his/her job performance in any manner, supervisors are required to request revocation of the approved Secondary Employment Request Form through the chain of command.

H.    If the employee fails to comply with any of the conditions or regulations set forth herein, permission to engage in secondary employment may be revoked.

I.    Department Heads will immediately advise affected employees of any revocation of secondary employment approval in writing.

J.    Department Heads will notify the affected employee, in writing, of approval of secondary employment.

## VII. RESTRICTIONS AND LIMITATIONS ON SECONDARY EMPLOYMENT

Secondary Employment is prohibited under the following conditions unless expressly authorized in writing by the appropriate Department Head or designee.

A.    When the agency, business, firm, or establishment for which the CCSO employee intends to work is not properly registered, licensed or insured as required by law.

B.    When the employee is a probationary employee, except following promotions within departments (i.e. Officer to Sergeant, Sergeant to Lieutenant, etc.).

C.    Where there is use of Cook County Sheriff's Office official law enforcement authority, equipment, records, documents, files, vehicles or CCSO services as a condition of employment.

D.    When, the secondary employment requires or implies that the CCSO employee represents himself/herself as a sworn CCSO employee, uses a department vehicle or wears the prescribed department uniform or clothing with the CCSO name or logo, except when the affected employee has requested and received written consent of the Sheriff or appropriate Department Head permitting such appearance during secondary employment.

NOTE: Employees must request this accommodation in advance, by written submission explaining the nature of employment and the reason for this accommodation.

E.    When the secondary employment will tend to bring either the department or department employee into disrespect or disfavor; or cause the employee in any

4

way or manner to violate departmental rules or regulations, or any federal, state, county or municipal law or ordinance.

F.   When secondary employment is in an establishment where the primary business is the sale of intoxicating liquor or gambling and: the employment is security related, or

1.   the employment includes serving as a bartender and/or dispensing intoxicating liquor, or

2.   the employment includes serving as a cocktail waiter/waitress, or

3.   the CCSO deems that the employment will bring discredit upon the department.

NOTE: For purposes of this order, secondary employment "in an establishment where the primary business is the sale of intoxicating liquor or gambling" includes working outside the establishment (i.e. parking lot, sidewalk, etc.).

G.   When secondary employment working conditions (including hours of work or location) would tend to impair the employee's efficiency, capabilities as an employee or interfere with the employee's ability to respond to emergency calls.

H.   When the secondary employment poses a conflict of interest (i.e. acting as an agent of a party pursuing legal action against the CCSO, etc.).

I.   When the CCSO employee is engaged in a security related secondary employment capacity at the site of a labor dispute, secondary employment will be prohibited for the duration of the job action.

NOTE: The relevant Department Head has the discretion to suspend this restriction.

J.   When the secondary employment involves the use of a CCSO canine for any purpose.

K.   When the secondary employment will bring discredit upon the CCSO.

## VIII.   RESPONSIBILITY TO THE DEPARTMENT

CCSO Employees engaged in approved secondary employment must ensure that the following regulations are strictly complied with:

A.   All CCSO employees engaging in secondary employment of any type shall recognize their primary responsibility to the Sheriff's Office and realize that they are subject to call at any time for emergencies, special assignments or overtime

CCSO GO 07-2

duty; and that their secondary employment cannot infringe upon this primary obligation.

B. CCSO employee shall ensure that the Secondary Employment Request form is accurate and current at all times. Any cancellation in secondary employment will require that the employee notify the appropriate Department Head via written report through the chain of command of such cancellation. Changes in secondary employment will require that the employee submit a new Secondary Employment Request Form following the procedures set forth in this order.

C. If the secondary employment involves a labor controversy of any nature, the CCSO employee must immediately notify the appropriate Department Head through the chain of command of the nature of such controversy.

## IX.  GENERAL

A. Preferential treatment by the CCSO or its employees shall not be afforded to the employer(s) of CCSO employees engaging in secondary employment.

B. The CCSO will not be liable for the actions or omissions of an employee during actual work hours in secondary employment.

C. CCSO employees engaged in a security employment capacity will not request or be credited with regular salary or overtime for court related activities (i.e. court appearances, depositions etc.) occurring as a consequence of secondary employment activities.

## X.  DISCIPLINARY ACTION

Disciplinary procedures will be initiated, in accordance with applicable General Orders and/or collective bargaining agreements, for any CCSO employee found to be in violation of this order.

## XI.  APPLICABILITY

This order is applicable to all CCSO employees and is for strict compliance.

BY ORDER OF:

THOMAS J. DART
SHERIFF OF COOK COUNTY

6



### SHERIFF OF COOK COUNTY
### SECONDARY EMPLOYMENT

| Date Submitted: | ☐ NEW REQUEST |
| | ☐ REQUEST RENEWAL |
| | ☐ STATUS CONFIRMATION |

| Name: | Star: |

| Rank: | Division/Section: | Shift/Hour(s): |

Employer or Self Employed:

| Do you work secondary employment? ☐ YES ☐ NO | **If answered YES, please continue to complete the entire form.** |

| Address: | Telephone: |

| Type of Work*: | Security/Traffic Control/ Law Enf. Related? ☐ YES ☐ NO |

| In Dept. Uniform? ☐ YES ☐ NO | Number of Hours per day: | Salary: |

| List the specific hours you will be working: | Mon: to | Tues: to | Wed: to |

| Thurs: to | Fri: to | Sat: to | Sun: to | Total Hours per week: |

| Are you currently de-deputized? ☐ YES ☐ NO | ☐ Not Applicable (civilian) | Indemnity Agreement attached: ☐ YES ☐ NO |

| Does your employer (secondary employment) require you to carry a firearm during your course of duty? ☐ YES ☐ NO | Most recent firearms qualification date: |

| Do you have other secondary employment forms on file for this year? ☐ YES ☐ NO | If yes, how many? |

*Describe duties

The undersigned authorizes _____ to release any and all of the
(employer)
undersigned's employment related information to the Cook County Sheriff's Office upon request.

The undersigned agrees to and has attached the executed Indemnity Agreement and proof of insurance to this request (if this is a request to engage in security, traffic control or law enforcement related employment).

The undersigned further agrees that he/she has read and understands the provisions of the current General Order on Secondary Employment and the member's respective union contract, if applicable, setting forth the conditions under which employees may engage in secondary employment. The undersigned agrees that in the event these conditions are not strictly complied with that he/she will surrender this privilege of so working and the permission which is evidence of this privilege.

The Undersigned certifies that all information in this Statement of Secondary Employment and on any other documents he/she has submitted for Secondary Employment is true and complete.

| Date: | Applicant's Signature: |

## SECONDARY EMPLOYMENT REQUEST
### (Continued)

Respective reviewing members shall enter their comments and recommendations, then forward this form through the department chain of command (completed original form to be forwarded to the Personnel Division). A photocopy of the Final Disposition shall be tendered to the requesting member informing him/her of their Secondary Employment Status. (Minimum of 3 supervisor signatures and star numbers)

| 1st Level Supervision | Name: | Rank/Title: | Date: | Recommendation |
| | Signature: | | Star No: | |
| | Comments: | | | Approved ☐ Disapproved ☐ |

| 2nd Level Supervision | Name: | Rank/Title: | Date: | Recommendation |
| | Signature: | | Star No: | |
| | Comments: | | | Approved ☐ Disapproved ☐ |

| 3rd Level Supervision | Name: | Rank/Title: | Date: | Recommendation |
| | Signature: | | Star No: | |
| | Comments: | | | Approved ☐ Disapproved ☐ |

| 4th Level Supervision | Name: | Rank/Title: | Date: | Recommendation |
| | Signature: | | Star No: | |
| | Comments: | | | Approved ☐ Disapproved ☐ |

| 5th Level Supervision | Name: | Rank/Title: | Date: | Recommendation |
| | Signature: | | Star No: | |
| | Comments: | | | Approved ☐ Disapproved ☐ |

| 6th Level Supervision | Name: | Rank/Title: | Date: | Final Disposition |
| | Signature: | | Star No: | |
| | Comments: | | | Approved ☐ Disapproved ☐ |

## INDEMNITY AGREEMENT

Agreement made this day,_____, between_____
of _____, of the City of _____, County of _____,
State of Illinois, herein referred to as indemnitor, and the County of Cook, a body politic and corporate, herein referred to as indemnitee.

In consideration for indemnitee's permission to allow the herein named employee of Cook County to be employed in any capacity for indemnitor, it is hereby agreed:

### SECTION ONE

Indemnitor undertakes to indemnify indemnitee against any and all claims, suits, actions, damages, costs, charges and expenses, including court costs and attorney's fees and against all liability, losses and damages of any nature whatsoever, that indemnitee shall or may at any time be put to by reason of the secondary employment of _____.

### SECTION TWO

Indemnitor agrees to defend indemnitee against any claims brought or actions filed against indemnitor and/or indemnitee with respect to the subject of the indemnity contained herein, whether such claims or actions are rightfully brought or filed. In case a claim shall be brought or any action be filed with respect to the subject indemnity herein, Indemnitor agrees that indemnitee may employ attorneys of its own selection to appear and defend the claim or action on behalf of the indemnitee, at the expense of indemnitor.

### SECTION THREE

Indemnitee agrees to notify indemnitor in writing, within 30 days, by registered mail, at indemnitor's address as stated in this agreement, of any claim made against indemnitee on the obligations indemnified against. Notification shall be effective on the date of mailing.

### SECTION FOUR

Indemnitor agrees to reimburse indemnitee for any necessary expenses, attorney's fees, or costs incurred in the enforcement of any part of this indemnity agreement.

### SECTION FIVE

Indemnitor agrees to pay indemnitee interest at the rate of six percent (6%) per annum on the amount of the loss indemnified against, from the date of the loss until such amount, plus interest, is paid. Indemnitor further agrees to pay indemnitee interest at the same rate on any sums indemnitee is obliged to pay, either in the enforcement of this agreement, or as advance payment or any other payment of any of the loss indemnified against, from the date of such payments until such sums, including interest, are paid.

### SECTION SIX

There shall be no modification or change in the terms of this agreement without the written approval of the indemnitee. Cancellation of this agreement may only occur when the Indemnitor no longer employs _____ and only upon written acceptance thereof by Indemnitee. Cancellation shall not relieve indemnitor from liability for claims, regardless of when made, resulting from occurrences which took place during the period of this agreement.

In witness whereof, the parties have executed this agreement at _____
_____
on this day _____.
(Date)


_____            _____
(Employer's Signature)                    (Corporate Title)

(FCN-4)(Dec. 07)

*Exhibit* 39
*# 3*

# SHERIFF OF COOK COUNTY
## SECONDARY EMPLOYMENT REQUEST

| | | |
|---|---|---|
| Name: **Deborah Hughes** | Star: **3547** | Date: **20 December 07** |
| Rank: **Deputy Sheriff** Division/Section: **Civil Process Division Skokie** | | Shift/Hour(s): **0600~1400** |

Employer or Self Employed:
**Devon Bank**

Address:
**6445 N Western ave Chicago,Il 60645**

Type of Work*:
**Security**

Telephone:
**773 465-2500**

Security/Traffic Control/ Law Enf. Related?
Yes **X**   No ☐

| In Dept. Uniform?   Yes ☐   No ☒ | Number of Hours per day: **6½** | Salary: **$18.00 hr** |
|---|---|---|

| List the specific hours you will be working: | Mon: **3:30** to **10:00** | Tues: **3:30** **10:00** | Wed: **3:30** to **10:00** |
|---|---|---|---|
| Thurs: **3:30** to **10:00** | Fri: **3:30** to **10:00** | Sat: **7:30** to **4:30** | Sun: to | Total Hours per week: **12-18** |

| Indemnity Agreement attached: Yes ☒   No ☐ | | |
|---|---|---|
| Do you have other secondary employment forms on file for this year?   Yes ☐   No ☒ | If yes, how many? | |

*Describe duties

**Security Officer**

The undersigned authorizes _____**Devon Bank**_____to release any and all of the
                                                           (employer)
undersigned's employment related information to the Cook County Sheriff's Office upon request.

The undersigned agrees to and has attached the executed Indemnity Agreement and proof of insurance to this request (if this is a request to engage in security, traffic control or law enforcement related employment).

The undersigned further agrees that he/she has read and understands the provisions of the current General Order on Secondary Employment and the member's respective union contract, if applicable, setting forth the conditions under which employees may engage in secondary employment. The undersigned agrees that in the event these conditions are not strictly complied with that he/she will surrender this privilege of so working and the permission which is evidence of this privilege.

| Date: | Applicant's Signature: *Deborah J Hughes #3547* |
|---|---|

# SECONDARY EMPLOYMENT REQUEST
## (Continued)

| Reviewing members shall enter their comments and recommendations, then forward this form through the chain of command (completed original form to be forwarded to the Personnel Division). | | |
|---|---|---|
| **Supervisor:** *Sgt K9 #160* | Date: *10 SEP 07* | |
| Comments: | | *Recommendation*<br><br>Approved ☑<br>Disapproved ☐ |
| **Watch Commander:** | Date: *10 SEP 07* | |
| Comments: | | *Recommendation*<br><br>Approved ☑<br>Disapproved ☐ |
| **Unit Commander:** A/C William J. Henrichs #704 | Date: *24 Sep 07* | |
| Comments: DIS Hughes HAS History CAlLing Sick ON THursDAy, FRiDAys FoR Long WEEKENDS, linking A-DAys WiTH HoliDAys. | | *Recommendation*<br><br>Approved ☐<br>Disapproved ☒ |
| **Division Chief:** Chief J. Mardli | Date: *27 SEPT 07* | |
| Comments: Concur w/ A/C Henrichs | | *Recommendation*<br><br>Approved ☐<br>Disapproved ☒ |
| **First Deputy:** | Date: | |
| Comments: | | *Recommendation*<br><br>Approved ☐<br>Disapproved ☐ |
| **Department Head:** | Date: *5 SEP 07* | |
| Comments: | | *Final*<br><br>Approved ☐<br>Disapproved ☒ |

(CCSO)

*41*

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

| | OP ID UA DEVON-1 | DATE (MM/DD/YYYY) 09/07/07 |
|---|---|---|

**PRODUCER**

The Lubin-Bergman Organization
5 Revere Drive-Suite 370
Northbrook IL 60062-1566
Phone: 847-673-4900  Fax: 847-559-8400

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURED**

Devon Bank
6445 N. Western Avenue
Chicago IL 60645-5452

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Arch Insurance Company | |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | **GENERAL LIABILITY** | | | | | |
| | | X COMMERCIAL GENERAL LIABILITY | BSPKG0157200 | 09/05/07 | 09/05/08 | EACH OCCURRENCE | $1,000,000 |
| | | ☐ CLAIMS MADE X OCCUR | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | GENERAL AGGREGATE | $3,000,000 |
| | | ☐ POLICY ☐ PROJECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $3,000,000 |
| | | **AUTOMOBILE LIABILITY** | | | | | |
| | | ☐ ANY AUTO | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ☐ ALL OWNED AUTOS | | | | | |
| | | ☐ SCHEDULED AUTOS | | | | BODILY INJURY (Per person) | $ |
| | | ☐ HIRED AUTOS | | | | | |
| | | ☐ NON-OWNED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY** | | | | | |
| | | ☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN AUTO ONLY: EA ACC | $ |
| | | | | | | AGG | $ |
| | | **EXCESS/UMBRELLA LIABILITY** | | | | | |
| | | ☐ OCCUR ☐ CLAIMS MADE | | | | EACH OCCURRENCE | $ |
| | | | | | | AGGREGATE | $ |
| | | ☐ DEDUCTIBLE | | | | | $ |
| | | ☐ RETENTION $ | | | | | $ |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | | ☐ WC STATU-TORY LIMITS ☐ OTHER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | **OTHER** | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**

Sheriff of Cook County is Additional Insured as respects Secondary Employment

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| SHERI-3 <br><br> Sheriff of Cook County <br> 118 N. Clark St. <br> Chicago IL 60602 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. <br><br> *[signature]* |

ACORD 25 (2001/08)

© ACORD CORPORATION 1988

## INDEMNITY AGREEMENT

Agreement made this day, _September 10, 2007_, between _Devon Bank_
_(Date)_

of _6445 Western Ave_, of the City of _Chicago_, County of _Cook_,
_(Address of Company)_ _(Name of Company)_

State of Illinois, herein referred to as indemnitor, and the County of Cook, a body politic and corporate, herein
referred to as indemnitee.

In consideration for indemnitee's permission to allow the herein named employee of Cook County to be
employed in any capacity for indemnitor, it is hereby agreed:

### SECTION ONE

Indemnitor undertakes to indemnify indemnitee against any and all claims, suits, actions, damages,
costs, charges and expenses, including court costs and attorney's fees and against all liability, losses and damages
of any nature whatsoever, that indemnitee shall or may at any time be put to by reason of the secondary
employment of _Deborah Hughes_

### SECTION TWO

Indemnitor agrees to defend indemnitee against any claims brought or actions filed against indemnitor
and/or indemnitee with respect to the subject of the indemnity contained herein, whether such claims or actions
are rightfully brought or filed. In case a claim shall be brought or any action be filed with respect to the subject
indemnity herein, indemnitor agrees that indemnitee may employ attorneys of its own selection to appear and
defend the claim or action on behalf of the indemnitee, at the expense of indemnitor.

### SECTION THREE

Indemnitee agrees to notify indemnitor in writing, within 30 days, by registered mail, at indemnitor's
address as stated in this agreement, of any claim made against indemnitee on the obligations indemnified
against. Notification shall be effective on the date of mailing.

### SECTION FOUR

Indemnitor agrees to reimburse indemnitee for any necessary expenses, attorney's fees, or costs
incurred in the enforcement of any part of this indemnity agreement.

### SECTION FIVE

Indemnitor agrees to pay indemnitee interest at the rate of six percent (6%) per annum on the amount
of the loss indemnified against, from the date of the loss until such amount, plus interest, is paid. Indemnitor
further agrees to pay indemnitee interest at the same rate on any sums indemnitee is obliged to pay, either in the
enforcement of this agreement, or as advance payment or any other payment of any of the loss indemnified
against, from the date of such payments until such sums, including interest, are paid.

### SECTION SIX

There shall be no modification or change in the terms of this agreement without the written approval of
the indemnitee. Cancellation of this agreement may only occur when the indemnitor no longer employs
_Ms. Hughes_ and only upon written acceptance thereof by indemnitee. Cancellation shall not
relieve indemnitor from liability for claims, regardless of when made, resulting from occurrences which took
place during the period of this agreement.

In witness whereof, the parties have executed this agreement at _Devon Bank_

on this day _September 10, 2007_
_(Date)_

_____ eFo          _Vice President and CFo_
(Employer's Signature)                   (Corporate Title)

*Exhibit*
*#4*

Denied
24/26 Sept 07

## SHE          UNTY
## COUR         RTMENT

| To: | D/S Deborah Hughes # 3547 | Date: 26 Sep 07 |
|---|---|---|

**From:**    Kevin G. Connelly, Acting Chief Deputy Sheriff

**Subject:**    **DENIAL OF SECONDARY EMPLOYMENT**

The undersigned has reviewed your Secondary Employment Request. At this time your request is being denied.

Kevin G. Connelly, Acting Chief Deputy Sheriff

KGC:lm

Distribution:

L. Terlep, A/Director Personnel
W.Henrichs, A/Chief, Civil Process Unit

*Exhibit*
*#5*

*Denied again by*
*Mendes-Tan.*
*Approved by commlly*
*1-8-[illegible]*

# SHE........ ........UNTY
## COURT SERVICES DEPARTMENT
### MEMORANDUM

| | | |
|---|---|---|
| **To:** | D/S Deborah Hughes # 3547 | **Date: 22 Jan 08** |
| **From:** | Kevin G. Connelly, 1st. Asst. Chief Deputy Sheriff | |
| **Subject:** | Secondary Employment | |

The undersigned has reviewed your Secondary Employment Request. At this time, your request has been approved. According to General Order 3200.2, you have provided the Cook County Sheriff's Office with adequate information, and have met all of the guidelines required from this order.

Thank you for your cooperation in this area of management.

*Kevin G. Connelly*

Kevin G. Connelly, 1st. Asst. Chief Deputy Sheriff

KGC:lm

Distribution:

L. Terlep, A/Director Personnel
W. Henrichs, A/Chief, Civil Process Unit

7738697558                          OFFICE OF PROF REV                        106

                                                                    PAGE   02/02

# COOK COUNTY SHERIFF'S OFFICE
## COURT SERVICES DEPARTMENT
### NOTIFICATION OF CHARGES/RECOMMENDATIONS

**NAME:**          **STAR#:**      **JDE#**       **UNIT OF ASSIGNMENT:**

D/S Deborah J. HUGHES #3547        377387         Civil Process -- Skokie District #5

You are hereby advised that by law you are to be informed of the following information in reference to
C.R. #2007-09-033, initiated by the Internal Affairs Division concerning the allegation(s) in which you
were named.

**NAME OF COMPLAINANT:**           Inv. R. Miller (Fraud Unit)

**DATE/TIME OF THE INCIDENT:**     On-Going Since 1993

**LOCATION OF THE INCIDENT:**      Devon Bank

**NATURE OF THE ALLEGATION(S)**    The accused has worked Secondary
                                   Employment since 1993 at the Devon Bank
                                   without Secondary Employment Approval.

**VIOLATION (S):**   General Order #05-01 Section III (D) & Section V (A & B) &
                     Section V (I) & General Order #3406 Code of Ethics

**FINDINGS:**        SUSTAINED.

**RECOMMEND:**       FIVE (5) DAYS WITHOUT PAY -- NO OPTIONS.

**NOTE:**   If you wish to **APPEAL** this decision you must contact the Internal Affairs Division, **IN
WRITING,** within five (5) working days. For **DEPUTIES**, if you wish to **GRIEVE** this decision, at a step
one level, you must file within fifteen (15) calendar days of receiving this notification. **SERGEANTS,** if
you wish to **GRIEVE** this decision, at a step one level, you must file within ten (10) calendar days of
receiving this notification. CIVILIANS, if you wish to **GRIEVE** this decision, at a step one level, you must
file within thirty (30) calendar days of receiving this notification. An **APPEAL** or **GRIEVANCE IS NOT
TO RE-EXAMINE THE EXISTING CASE.** It is only for the purpose of submitting new evidence or
testimony that you feel was not considered in the original investigation.

_Deborah J. Hughes_                        (Reserved On)
**Accused/Employee's Signature**

**DATE RECEIVED:** 29 Nov 07        **TIME RECEIVED:** 0615 am

_Sgt K9 #160_
**Witnessed By:**

107



Final Disposition Form

# COOK COUNTY SHERIFF
## Inspector General
Unit -        Courts

Date: **26 November 2007**

CI# **2007-09-033** , CF#                     has been returned
from Command Channel Review with a FINDING of
**SUSTAINED**.

JDE#: **377387**          Name: **Deborah Jean Hughes**
has been found in violation of one or more of the Rules
and Regulations of the Sheriff's Department.  The
recommended penalty for **Deborah Jean Hughes**
has been designated as:

## Suspended 5 Days/No Options

After date(s) of Suspension have been determined, please insert those
date(s) below in the appropriate section. Then return the copy marked
"Return to I.G. Office" to I.G.O. Forward the "Personnel Copy" to the
Personnel Division. Personnel Division: Please confirm dates and fax to
the Inspector General's Office.

For Internal Affairs Division Use Only:          (Insert Dates)

For Personnel Use Only:          (Insert Dates)

Personnel Please Fax to the I.G.O. (312) 603-9673

# I.G. COPY

*Exhibit #6*

# THOMAS J. DART
## SHERIFF OF COOK COUNTY
## COURT SERVICES DEPARTMENT
## MEMORANDUM

| | |
|---|---|
| **To:** | D/S Calvin L. Fields # 3444 | **Date: 04 Oct  07** |
| **From:** | Kevin G. Connelly, Acting Chief Deputy Sheriff | |
| **Subject:** | **DENIAL OF SECONDARY EMPLOYMENT** | |

The undersigned has reviewed your Secondary Employment Request.  At this time your request is being denied.

*Kevin G. Connelly*

Kevin G. Connelly, Acting Chief Deputy Sheriff

KGC:lm

Distribution:

L. Terlep, A/Director Personnel
M. DiCaro, A/Chief, Warrants, Levies & Evictions



PHONE (312) 603-6444

# SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
## RICHARD J. DALEY CENTER
### 50 W. WASHINGTON - ROOM 704
### CHICAGO, IL 60602
**THOMAS J. DART**
SHERIFF

**Date:**       18 January, 2008

**To:**          See Distribution

**From:**       Matthew Burke – Administrative Asst. Legal & Labor Affairs

**Subject:**    4th Step Grievance Answer (07-CP-019) D/S Calvin Fields #3444

After careful consideration of all the evidence brought before me, I have reached a decision regarding the above grievance.

D/S Fields claims the Employer violated the Secondary Employment policy. The facts presented do not support that claim.

The grievance is therefore denied.

However, D/S Fields is free to re-submit a Secondary Employment application.

Matthew J. Burke, Administrative Asst.
Legal & Labor Affairs

**DISTRIBUTION:**
**Sean Heffernan, Chief Deputy Sheriff**
**J. McArdle, Chief, Civil Process**
**M. DiCaro, A/Chief, Warrants, Levies & Evictions**
**Rosemarie Nolan, Director Personnel**
**R. Zene, Internal Affairs Director**
**A. O'Donnell, Local 714**

LAW ENFORCEMENT DIVISION

# TEAMSTERS LOCAL UNION NO. 714

*Affiliated With International Brotherhood of Teamsters*

6815 WEST ROOSEVELT ROAD • BERWYN, ILLINOIS 60402-1098

TELEPHONE: (773) 242-3215 • FAX: (708) 788-4662



*Exhibit #7*

February 14, 2008

### VIA CERTIFIED MAIL – RRR

Todd H. Stroger, President
Board of Commissioners
118 North Clark Street, Room 537
Chicago, IL 60602

Jonathan Rothstein
Acting Chief of the Bureau of Human Resources
118 North Clark Street, Room 840
Chicago, IL 60602

Sheriff Thomas J. Dart
Richard J. Daley Center, Room 704
Chicago, IL 60602

Re:    Grievance No.:     07-CP-019 – Denial of Secondary Employment
       Grievants Name:    Calvin Fields

Pursuant to the terms of the collective bargaining agreement between the County of Cook/Sheriff of Cook County (as joint employers) and Teamsters Local Union No. 714 (representing Cook County Deputy Sheriffs), the Union intends to arbitrate the above-referenced grievance.

This notice is being sent to you to meet the time requirements of the arbitration provision of the collective bargaining agreement. However, and in the meantime, the Union intends to further investigate the facts and circumstances regarding the above-referenced case.

Sincerely,

*Michael A. Vendafreddo*

Michael A. Vendafreddo
Business Representative

cc:    Peter Kramer, General Counsel, Legal & Labor Affairs Division
       Anthony O'Donnell, Chief Union Steward
       Robert Costello, Union Counsel
       Grievant

MACHINERY, SCRAP IRON, METAL AND STEEL, CHAUFFEURS, WAREHOUSEMEN, HANDLERS, HELPERS, ALLOY FABRICATORS, PUBLIC EMPLOYEES, PHARMACISTS, MOTION PICTURE, THEATRICAL, EXPOSITION, CONVENTION AND TRADE SHOW EMPLOYEES UNION

# INTERNATIONAL BROTHERHOOD OF TEAMSTERS *Exhibit #8*



**JAMES P. HOFFA**
General President

25 Louisiana Avenue, NW
Washington, DC 20001

**C. THOMAS KEEGEL**
General Secretary-Treasurer

202.624.6800
www.teamster.org

## NOTICE

June 9, 2008

To:   The Officers and Members of Local 714, Chicago, Illinois

On August 30, 2007, the Independent Review Board ("IRB") recommended to me that Local 714 be placed in Trusteeship. IRB cited three areas of concern:

1. That the Local's Principal Officer, Robert A. Hogan, and its President, James M. Hogan, had jeopardized the Local's interests by hiring Robert Riley as the Local's Business Agent and Director of Organizing and then failing to monitor, investigate or take appropriate action regarding Riley's violations of the Consent Decree by having knowing contact with William T. Hogan, Jr., a person who has been permanently barred from the Union by IRB.

2. That the Local Union had also failed to perform its duties as bargaining agent at the five companies at which substantial amounts of bargaining unit work were being performed by temporary or other workers who were not covered by the applicable collective bargaining agreements in circumstances which suggested corrupt dealings with these companies.

3. That the Local, despite having previously been placed in trusteeship over allegations of favoritism and nepotism in the referral of members for trade show and movie jobs, continued to administer its referral system for movie jobs in a manner that benefitted friends and relatives of the Robert Hogan and James Hogan.

In lieu of imposing an immediate trusteeship, on September 20, 2007, I appointed a personal representative to Local 714 under Article VI, Section 1 (f) of the International Constitution. I also scheduled a hearing to determine whether a trusteeship over this Local was warranted, originally for January 29, 2008, which was adjourned several times.

In the meantime, IRB has proceeded to hear related charges against Robert A. Hogan, after rejecting as "inadequate" a decision by the IBT to suspend Hogan from office for a period of six months, beginning effective on December 13, 2007. A decision from IRB on these charges is anticipated soon.

My personal representative has worked for the past 9 months with the Local's current officers to address the concerns identified by IRB. Purported procedures have been developed to address improper contact by officers and

employees of the Local with barred individuals, and steps have been taken purportedly to address the enforcement of contractual jurisdiction in the metal scrap industry. Additionally, with the apparent agreement of Local 714's Executive Board, jurisdiction over movie and trade show work in Chicago was transferred, effective May 1, 2008, from Local 714 to Local 727, an action that was designed to eliminate the perception that job referrals in these industries are calculated to benefit friends and relatives of certain Local 714 officers.

Nonetheless, during the past several weeks it has become apparent that additional and immediate steps must be undertaken to protect the interests of members and the integrity of Local 714. Specifically, I have received credible reports that:

1.  The officers of Local 714 have failed and refused to cooperate with my Personal Representative, officials of Local 727 and representatives of the IBT in connection with the transfer of movie and trade show jurisdiction to Local 727. This lack of cooperation has included refusing to turn over movie and trade show grievance files (or delaying doing so), attempting to undermine the transfer of jurisdiction with respect to affected members, providing incomplete or inaccurate information concerning the identity of stewards, failing to turn over pertinent contractual documents (or delaying doing so), refusing to provide address or Social Security information concerning affected members (or delaying doing so), and providing incomplete or outdated information concerning the movie and trade show referral practices.

2.  The officers of Local 714 have also sought to hold hostage certain assets of the Local 714 health fund which were contributed on behalf of movie and trade show participants who have been or will be transferring to the Local 727 health fund. In this regard, the Local 714 officers have sought to cause the Local 714 health fund to retain at least half of the assets of the Local 714 health fund, rather than transferring them to the Local 727 fund, leaving the Local 714 health fund with at least $7 million in assets for the 43 remaining participants, many of whom are officers or employees of Local 714. The Local 714 officers have failed to provide Local 727 with copies of the trust and related documents pertaining to the Local 714 health fund, and have stated that they intend to cause the Local 714 health fund to retain reserves disproportionate to the remaining participants so that the fund can be used as a tool to organize employers with high health and welfare costs and to relieve the Local Union of the cost burden of making health and welfare contributions on behalf of its officers and staff. Although the officers have claimed that the allocation of assets between the Local 714 and 727 funds will be based on an analysis performed by the Local 714's actuary, the analysis provided thereafter does not support the allocation proposed. In addition, Local 714's officers have breached and/or threatened to breach their fiduciary duty to the transferred movie and trade show members in violation of the Fiduciary Code of Ethics set forth in Article II, Section 2 of the IBT Constitution by endangering health coverage for these members, citing provisions of the health and

welfare plan, a copy of which they have failed and refused to provide to Local 727.

3.    The officers of Local 714 have also failed and refused to transfer the assets of the Local 714 vacation fund, despite the fact that this fund exists for the sole benefit of the transferred trade show and movie members.

4.    Despite the six month suspension from office of Local 714's principal officer, Robert Hogan, the Local's officers have inexplicably continued to send written communications to employers reflecting that Hogan remains the Local's principal officer.

5.    Although the officers of Local 714 have reported to me that they have taken a number of steps to ensure that the Local's officers, members and staff will not knowingly associate with persons who have been barred from the Union, it appears that these assurances are illusory. In this regard, it does not appear that the Local's officers have followed through with announced efforts to monitor cell phone calls by officers and employees with barred persons and, more importantly, it appears that the Local's officers have turned a blind eye to knowing contact between Business Agent Frank Zebell and Robert Hogan which occurred, in part, during business hours and during the period when Hogan was suspended from office and prohibited from participating in the internal affairs of Local 714. It was not until months after this contact came to light that the Local provided Zebell with a proverbial slap on the wrist by issuing him a "written warning."

6.    Other circumstances have also occurred from which it may be inferred that the officers or employees of Local 714, directly or indirectly, have engaged in knowing contact with Robert Hogan and/or William Hogan or tolerated prohibited contacts by associates or subordinates. These include:

   a.  The unexplained presence of the Local's former attorney, Marvin Sacks, at the Local's offices, despite the fact that Sacks no longer does legal work for the Local or has any other apparent reason to be at the Local. In this regard, Sacks has admitted being in regular contact with William Hogan.

   b.  The sudden appearance of William Hogan as the representative of an employer proposing to enter into an agreement with Local 727.

   c.  The rescheduling of a meeting of the Local 714 Executive Board to June 16, 2008, the day after Robert Hogan's suspension from office expires.

7.    A majority of the officers of Local 714 has failed to keep all members of the Local's Executive Board informed about the Local's business.

8.    The Local's Bookkeeper has failed to cooperate with my personal representative regarding efforts to update and monitor financial practices in the Local.

- 3 -

Based on the foregoing credible reports, it has become apparent to me that the appointment of a Personal Representative has been insufficient to resolve the problems identified at Local 714 by the IRB, as well as other problems that have since come to light, and that unless action is taken immediately the Local and the Local's membership, including former members who have been transferred to Local 727, are in danger of suffering irreparable harm in the form of impaired or eliminated health benefits. Additionally, unless action is taken immediately, continued knowing contact between the officers, employees and members of Local 714, as well as the members who were transferred to Local 727, and persons who have been barred from participation in the Union seems likely to continue. Accordingly, I have determined that an immediate trusteeship of Local 714 is necessary for the purpose of correcting corruption or financial malpractice and otherwise carrying out legitimate objects of the Local Union. I am therefore imposing an emergency trusteeship over the affairs of Local 714, effective on June 11, 2008.

I have appointed Terry Hancock to serve as temporary Trustee, and Brian Rainville, Becky Strzechowski and Thomas W. Stiede to serve as temporary Assistant Trustees. Pursuant to Article VI, Section 5 of the International Constitution, the members of Local 714 will soon be receiving notice of a hearing to determine whether the temporary trusteeship should be extended or dissolved. Separate notice of the hearing shall be posted by the temporary trustee and any member of the Local will have the opportunity to address the hearing panel or submit written comments.

A copy of this notice shall be posted immediately in the Local Union headquarters and in such places as will ensure that the members of Local 714 will be informed of the imposition of this emergency trusteeship.

Fraternally yours,

*James P. Hoffa*

James P. Hoffa
General President

*Ted Hancock*

Temporary Trustee
Dated: June 11, 2008